FRED P. PURSELL AND HELEN PURSELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86587. Filed May 15, 1962.

*L. E. Renard, Esq.,* for the petitioners.
*Albert Squire, Esq.,* for the respondent.

DRENNEN, *Judge:* Respondent determined deficiencies in income tax due from petitioners for the taxable years and in the amounts as follows:

| Year | Amounts |
|------|---------|
| 1954 | $12,456.24 |
| 1955 | 10,687.55 |
| 1956 | 9,696.09 |
| 1957 | 8,092.59 |
| 1958 | 10,640.51 |

The issues for decision are:

(1) Whether petitioners changed their method of accounting in 1954 within the meaning of section 481 of the Internal Revenue Code of 1954.[1]

(2) Whether section 29 of the Technical Amendments Act of 1958, which amended section 481 of the Internal Revenue Code, is constitutional.

(3) If petitioners changed their method of accounting in 1954, whether they initiated the change within the meaning of section 481 (a) (2) of the 1954 Code, as amended by the Technical Amendments Act of 1958.

(4) Whether respondent has correctly computed the transitional adjustments authorized by section 481(a) by adding to income for 1954 the amount of Fred P. Pursell's (hereinafter referred to as Fred) inventory and accounts receivable at December 31, 1953, and by deducting from taxable income the amount of Fred's accounts payable at December 31, 1953.

(5) Whether the assessment and collection of income tax for the year 1954 is barred by the statute of limitations.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found as stipulated.

Petitioners at all times material hereto have been husband and wife residing in Clarks Green, Pennsylvania. They filed timely joint Federal income tax returns with the district director of internal revenue at Scranton, Pennsylvania, for each of the years 1954 through 1958 and reported on the basis of a calendar year.[2] Their return for 1954 was filed on April 14, 1955.

In about 1933, Fred started in business for himself in the wholesale radio and electronics business. During the taxable years here involved, Fred was engaged in the business of selling at wholesale radio, electronic, and television equipment.

From at least the year 1946 through 1958, the selling of merchandise was an income-producing factor in Fred's business, and it was necessary to use inventory to clearly reflect income for these years. The accrual method, at least for purchases and sales, with inventories, was necessary to clearly reflect income from Fred's business for these years.

Since at least January 1, 1949, Fred has maintained a double entry set of books on an accrual method of accounting.

For the taxable years 1950 through 1953, petitioners reported their income on their tax returns on the cash receipts and disbursements

---

[1] All section references are to the Internal Revenue Code of 1954, as amended by the Technical Amendments Act of 1958, unless otherwise indicated.

[2] The issues involved concern a business conducted by Fred P. Pursell. Our references herein to Fred will include both petitioners where applicable.

method of accounting, without using or showing any opening or closing inventories.

For the taxable years 1954 to 1958, inclusive, petitioners computed their taxable income on their income tax returns on an accrual method of accounting, in accordance with Fred's books. Cost of goods sold on these returns was computed with the use of opening and closing inventories.

At the close of business December 31, 1953, Fred had accounts receivable of $166,057.20. The sales represented by these accounts receivable were not reported as income in Fred's returns for years prior to 1954, when such sales were made. Nor were they reported as income in Fred's returns subsequent to 1953 to the extent collections were made on these accounts receivable.

At the close of business December 31, 1953, Fred had accounts payable of $82,309.52. The purchases of merchandise represented by these accounts payable were not deducted on Fred's return for 1953 when such purchases were made, nor in 1954, when the accounts payable were paid.

Fred's inventory at the close of business December 31, 1953, was $93,935.59.

Petitioners' income tax returns for years prior to 1953 have been destroyed under respondent's program for destruction of old records.

The retained copies of petitioners' returns for the years 1937 to 1949 show the following opening and closing inventories:

| Year | Opening | Closing | Year | Opening | Closing |
|------|---------|---------|------|---------|---------|
| 1937 | $7,340.15 | $6,603.28 | 1944 | $4,852.30 | $10,030.25 |
| 1938 | 6,603.28 | 6,216.11 | 1945 | 10,030.25 | 13,284.46 |
| 1939 | 6,216.11 | 6,965.09 | 1946 | 13,284.46 | 24,018.00 |
| 1940 | 6,965.09 | 4,784.96 | 1947 | 24,018.00 | 27,420.60 |
| 1941 | (1) | (1) | 1948 | 27,420.60 | 30,673.03 |
| 1942 | (1) | (1) | 1949 | 30,673.03 | 34,017.51 |
| 1943 | 6,739.13 | 4,852.30 | | | |

1 Retained copy unavailable.

Fred's books and records show the following accounts receivable (net after reserve for bad debts), merchandise inventory, and accounts payable as of December 31 of the following years:

| Year | Accounts receivable | Inventory | Accounts payable |
|------|---------------------|-----------|------------------|
| 1946 | $19,176.13 | $24,018.00 | $14,633.50 |
| 1947 | 17,714.26 | 27,420.60 | 13,263.91 |
| 1948 | 19,039.83 | 30,673.03 | 2,926.32 |
| 1949 | 31,065.55 | 34,017.51 | 12,182.91 |
| 1950 | 50,616.95 | 23,838.16 | 10,142.32 |
| 1951 | 81,860.80 | 61,123.07 | 38,164.49 |
| 1952 | 140,100.43 | 64,754.37 | 7,763.66 |
| 1953 | 166,057.20 | 93,935.59 | 82,309.52 |

For the taxable year 1947, a deputy collector, as examining officer, audited Fred's returns. He found that Fred reported income by the cash method for 1947 except that Fred used inventories. He further determined that Fred included in both opening and closing inventories for 1947 merchandise for which he had not paid. The examining officer decided Fred's inventories should not include merchandise for which he had not paid, and determined that accounts payable with respect to inventory at December 31, 1946, and at December 31, 1947, were in the respective amounts of $14,961.63 and $11,829. He adjusted income for 1947 by adding to income the amount of the decrease in accounts payable with respect to merchandise between the first and the last days of 1947.

On December 4, 1957, petitioners and a delegate of the Secretary of the Treasury, acting on behalf of respondent, executed a Form 872 entitled "Consent Fixing Period Of Limitation Upon Assessment Of Income And Profits Tax" in which they agreed:

That the amount of any income, excess-profits, or war-profits taxes due under any return (or returns) made by or on behalf of the above-named taxpayer (or taxpayers) for the taxable year ended December 31, 1954, under existing acts, or under prior revenue acts, may be assessed at any time on or before June 30, 1959, except that, if a notice of deficiency in tax is sent to said taxpayer (or taxpayers) by registered mail on or before said date, then the time for making any assessment as aforesaid shall be extended beyond the said date by the number of days during which the making of an assessment is prohibited and for sixty days thereafter.

On December 9, 1958, petitioners executed another Form 872 in which they agreed as they had in the first consent, except that the time for assessing any income tax due for the taxable year ended December 31, 1954, was stated to expire on June 30, 1960.

The notice of deficiency herein was dated February 24, 1960.

ULTIMATE FINDINGS.

Fred initiated a change in his method of accounting in 1954, the year of change, within the meaning of section 481, as amended by the Technical Amendments Act of 1958.

Those adjustments which are necessary solely by reason of Fred's change, in order to prevent amounts from being duplicated or omitted, are the addition to income of the amounts of inventory and accounts receivable as such amounts appeared on Fred's books at December 31, 1953, and the deduction from taxable income of the amount of accounts payable as such amount appeared on Fred's books at December 31, 1953.

OPINION.

Fred, for 1954 and for prior taxable years, maintained the books and records of his business on the accrual method of accounting.

It is undisputed that such method was proper. However, for 3 years prior to 1954 he reported and computed income for Federal tax purposes strictly by the cash method. In 1954, without first requesting permission of, or being required to by, the Commissioner, he changed his method of reporting and computing his income for tax purposes to the accrual method, in conformity with his method of bookkeeping.

On his 1954 return Fred computed cost of goods sold by using a beginning inventory of $93,935.59. In computing gross receipts he did not take into consideration collections in 1954 on accounts receivable which he had at January 1, 1954, in the amount of $166,057.20, and in computing deductions he did not take into consideration payments in 1954 on accounts payable on his books at the beginning of 1954 in the amount of $82,309.52. The amounts of these items are not in dispute. This treatment would not ordinarily be subject to objection under rules of computing net income by the accrual method, but because 1954 marked Fred's changeover from the cash to the accrual method of reporting income, the treatment accorded the items in 1954 would mean that Fred would get the benefit of a deduction in 1954 representing opening inventory which he had presumably paid for and deducted in years prior to 1954. It would also mean that amounts received on accounts receivable at January 1, 1954, would never be included in income and that Fred would never receive the benefit of a deduction for payments made on accounts payable at January 1, 1954.

Respondent has determined deficiencies for the taxable years 1954 through 1958 on the grounds that, under section 481(a), I.R.C. 1954,[3] in computing Fred's taxable income for 1954—a year of change in the method under which Fred's taxable income was computed—there must be taken into account those adjustments which are necessary solely by reason of Fred's change of method in order to prevent amounts from being duplicated or omitted. The adjustments authorized by section 481(a), according to respondent's determination, are the addition to reported income for 1954 of $259,992.79, representing the sum of Fred's inventory and accounts receivable at January 1, 1954, and the allowance of a deduction amounting to $82,309.52, rep-

---

[3] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

  (a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

    (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

    (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply *unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.* [Emphasis supplied.]

resenting accounts payable at January 1, 1954. The net result is the addition to income of $177,683.27.

Further, respondent has determined that one-tenth of the amount of this net adjustment, or $17,768.33, constitutes additional income in each of the taxable years 1954–1958.[4] This determination has been made in accordance with the provisions of section 481(b)(4)(B), added to the Code by section 29 of the Technical Amendments Act of 1958,[5] according to respondent's argument.

Petitioners advance several arguments to support their allegations of error in respondent's determination.

First, petitioners contend that Fred at no time changed his accounting method for the keeping of his books, and that, consequently, section 481(a) as amended by the Technical Amendments Act of 1958 has no application to the facts of this case. They rely on the case of *Robert G. Frame*, 16 T.C. 600 (1951), affirmed per curiam 195 F. 2d 166 (C.A. 3, 1952), for the proposition that adjustments such as respondent proposes in this proceeding cannot be made in the year of change from a cash to an accrual method of *reporting* income when that change is not accompanied by a change in the method of *bookkeeping*, and their argument is buttressed by other authorities, all decided under the Internal Revenue Code of 1939 before the enactment of section 481 in the Code of 1954. Petitioners say that section 481 applies only in those instances in which the taxpayer changes his method of bookkeeping.

---

[4] Although this proceeding is directly concerned only with the years 1954–1958, presumably respondent's determination would also require the inclusion in taxable income of the amount of $17,768.33 in each of the taxable years 1959–1963.

[5] SEC. 481(b) LIMITATION ON TAX WHERE ADJUSTMENTS ARE SUBSTANTIAL.—

✻ ✻ ✻ ✻ ✻ ✻ ✻

(4) SPECIAL RULE FOR PRE-1954 ADJUSTMENTS GENERALLY.—Except as provided in paragraphs (5) and (6)—

(A) AMOUNT OF ADJUSTMENTS TO WHICH PARAGRAPH APPLIES.—The net amount of the adjustments required by subsection (a), to the extent that such amount does not exceed the net amount of adjustments which would have been required if the change in method of accounting had been made in the first taxable year beginning after December 31, 1953, and ending after August 16, 1954, shall be taken into account by the taxpayer in computing taxable income in the manner provided in subparagraph (B), but only if such net amount of such adjustment would increase the taxable income of such taxpayer by more than $3,000.

(B) YEARS IN WHICH AMOUNTS ARE TO BE TAKEN INTO ACCOUNT.—One-tenth of the net amount of the adjustments described in subparagraph (A) shall (except as provided in subparagraph (C)) be taken into account in each of the 10 taxable years beginning with the year of the change. The amount to be taken into account for each taxable year in the 10-year period shall be taken into account whether or not for such year the assessment of tax is prevented by operation of any law or rule of law. If the year of the change was a taxable year ending before January 1, 1958, and if the taxpayer so elects (at such time and in such manner as the Secretary or his delegate shall by regulations prescribe), the 10-year period shall begin with the first taxable year which begins after December 31, 1957. If the taxpayer elects under the preceding sentence to begin the 10-year period with the first taxable year which begins after December 31, 1957, the 10-year period shall be reduced by the number of years, beginning with the year of the change, in respect of which assessment of tax is prevented by operation of any law or rule of law on the date of the enactment of the Technical Amendments Act of 1958.

We disagree with petitioners on this point. Changes by taxpayers in their methods of computing income have given rise to difficult problems in the past, and these problems have been particularly apparent in the situation where a taxpayer changes his method—for whatever reason—from the cash to the accrual method. Such a situation has caused litigation since at least the case of *John G. Barbas*, 1 B.T.A. 589 (1925). The cases involving that litigation have only historical significance in this proceeding because this case arises under section 481 of the 1954 Code which had no counterpart in the 1939 Code. See *Southeast Equipment Corporation*, 33 T.C. 702 (1960), affd. 289 F. 2d 493 (C.A. 6, 1961).[6] The questions here must be decided under section 481 as enacted. We think it is clear from the express language used by Congress, particularly when viewed in the light of the confusion in the law existing at the time this legislation was being considered and its legislative history, that application of the section is not limited to those cases in which the taxpayer changes his method of keeping his books, but applies in any case wherein the method of accounting employed in computing taxpayer's taxable income for a particular year is different from the method of accounting employed in computing the taxpayer's income for the preceding taxable year, whether or not such change is accompanied by a change in the method of accounting employed in keeping taxpayer's books. We think the provisions of section 481(a) were intended to, and do, dispense generally with those distinctions which were developed by the courts dealing with the problem of a change from the cash to the accrual method under the 1939 Code.[7]

Section 481(a) sets forth the general rule applicable in cases in which, in the year of change, the taxpayer's *taxable income* is *computed* "under a method of accounting different from the method under

[6] The litigation under the 1939 Code is of interest because it provided the climate in which Congress enacted the new provision in section 481 of the 1954 Code. However, we think it would unjustifiably prolong this opinion to attempt a discussion of that litigation here. For a review of the litigation see the opinion in *Welp* v. *United States*, 103 F. Supp. 551 (N.D. Iowa 1952). While this decision was reversed by the Court of Appeals, 201 F. 2d 128 (C.A. 8, 1953), the reviewing court complimented the "comprehensive review of authorities so well done in the trial court's opinion." See also *David W. Hughes*, 22 T.C. 1 (1954); *Clement A. Bauman*, 22 T.C. 7 (1954); *Advance Truck Co.*, 29 T.C. 666 (1958), affd. 262 F. 2d 388 (C.A. 9, 1958); *Stanford R. Brookshire*, 31 T.C. 1157 (1959), affd. 273 F. 2d 638 (C.A. 4, 1960); *Commissioner* v. *Frame*, 195 F. 2d 166 (C.A. 3, 1952), affirming 16 T.C. 600 (1951); *Commissioner* v. *Schuyler*, 196 F. 2d 85 (C.A. 2, 1952); *Commissioner* v. *Cohn*, 196 F. 2d 1019 (C.A. 2, 1952); and *Commissioner* v. *Dwyer*, 203 F. 2d 522 (C.A. 2, 1953), the latter three cases affirming Memorandum Opinions of this Court, for cases decided since the District Court opinion in *Welp* v. *United States, supra*. See also Dixon, "Pyramiding Income In Changing From A Cash To An Accrual Method of Accounting," 8 Tax L. Rev. 355 (1953). Suffice it to say that a study of that litigation makes it clear that the climate was at best cloudy.

[7] Nevertheless, we limit our decision to the facts here involved where taxpayer had kept his books on the accrual basis which admittedly properly reflected his income in prior years as well as the year of change. Of course in section 29 of the Technical Amendments Act of 1958, amending section 481(a), Congress did insert one proviso which may or may not have been developed in the litigation under the 1939 Code. We discuss that proviso in dealing with another point of petitioners' argument.

which the taxpayer's *taxable income* for the preceding taxable year was computed." (Emphasis supplied.) The term "taxable income" for purposes of the Code of 1954 is given a definite meaning under section 63(a); it signifies net income for income tax purposes, not for accounting purposes generally. Therefore, it seems clear that section 481(a) applies, by its express terms, to situations where there is a change in the method of computing income for tax purposes; that is, for purposes of reporting income.

The difference between computing income generally and computing taxable income for income tax purposes is also pointed up in section 446(e), the provisions of which deal with obtaining consent of the Secretary of the Treasury for a change in computing *taxable income* after a change in "the method of accounting on the basis of which [the taxpayer] regularly computes his income in *keeping his books*." (Emphasis supplied.) Also, section 446(a) provides that "*Taxable income* shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in *keeping his books*." (Emphasis supplied.)

Section 481(a) as it appeared in the original bill adopted by the House of Representatives [8] was the same as in the present law down to subparagraph (2) which read as follows:

(2) there shall be taken into account those adjustments which are determined, by the Secretary or his delegate, to be necessary solely by reason of the change in order to prevent amounts from being duplicated or entirely omitted.

The Senate [9] amended subparagraph (2) to read as follows:

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustments in respect of any taxable year to which this subtitle does not apply.

The Senate version was adopted as a part of the original 1954 Code.

The proposed effect of section 481, as it was enacted in the 1954 Code, is explained in the following statement by the Senate Finance Committee:

If there is a change in the method of accounting employed in computing taxable income from the method employed for the preceding taxable year, adjustments must be made in order that every item of gross income or deduction is taken into account and that none are omitted. At the same time no item is to affect the computation of taxable income more than once. It is only those omissions or doubling ups which are due to the change in method which must be adjusted.

Under present law these adjustments are made whenever the taxpayer requests permission to change his method of accounting. Where the Commissioner forces a taxpayer to change his method of accounting because the old method does not clearly reflect income, various court decisions have denied the Commissioner the right to make the necessary adjustments.

---

[8] H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 115, 116 (1954).

[9] H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 202 (1954).

Under the House bill for taxable years beginning after December 31, 1953, if the taxpayer changes his method of accounting, voluntarily or involuntarily, adjustments will be made in the year of the change. Under your committee's amendments no part of the transitional adjustments will be based on items that were, or should have been, under the proper method of accounting, taken into account as an income-producing factor for taxable years to which subtitle A of the 1954 Code does not apply. It is contemplated that such transitional adjustments as are required will take into account inventories, accounts receivable, and accounts payable, but that they should not be limited to those categories. If the adjustments increase the taxable income by more than $3,000, the tax attributable to the adjustment shall not exceed the tax which would have resulted if the adjustment had been included ratably in the taxable year of the change and the 2 preceding taxable years. This special limitation only applies if the taxpayer used the old method in the 2 preceding taxable years. [S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 307, 308 (1954).]

The general purpose of the original section 481 seems obvious. It was to prevent income from escaping tax altogether and to prevent double taxation of income where such escape or doubling up resulted solely from a change in method of computing taxable income, regardless of why the change was made and whether it was made by the taxpayer or the Commissioner. The emphasis was on taxing all income, but only once, and the barriers to that objective raised by the courts in litigation under the 1939 Code were eliminated. The broad language used indicates that the lawmakers meant to provide a working rule, definitive in its application, which would deal with problems which, in the absence of a statutory guide, had proved troublesome to the courts. The only tests were to be whether the adjustment would prevent income from being duplicated or omitted, and whether the adjustment was made necessary solely by reason of the change in method of computing taxable income. The Senate retained the same general purpose but limited the adjustments to those with respect to taxable years beginning with 1954.

We hold that section 481(a) applies where there is a change in the method of accounting employed in computing taxpayer's taxable income and is not limited in application to those situations wherein there has also been a change in the method of accounting employed in keeping taxpayer's books.

The adjustments which respondent has proposed herein are clearly necessary solely by reason of Fred's change of method of computing taxable income in order to prevent amounts from being duplicated or omitted, and petitioners do not contend otherwise. But they are adjustments with respect to a taxable year prior to 1954 based on items that were, or should have been, under a proper method of computing taxable income, taken into account as an income-producing factor in prior years, and we would be constrained to hold, were it not for the amendment of section 481 by section 29 of the Technical Amendments Act of 1958, that the proposed adjustments could not be made. See

secs. 1.481–2(d) and 1.481–4(e), Income Tax Regs., and *Southeast Equipment Corporation, supra.* However, that amendment added the last clause to the present section 481(a)(2) of the Code which retroactively permitted adjustments with respect to years prior to 1954 to be made if the adjustment "is attributable to a change in the method of accounting initiated by the taxpayer." We think the quoted language, which refers only to "method of accounting" and not to method of accounting under which taxpayer's taxable income is computed, must be read in the context of the entire section of which it is a part, and when so read it applies to a change in the method of computing taxable income initiated by the taxpayer.

Petitioners contend, but do not press the argument on brief, that because of its retroactive effect, section 29 of the Technical Amendments Act of 1958 is unconstitutional. The constitutionality of that section was put in issue in *Southeast Equipment Corporation, supra,* and this Court and the Court of Appeals on review found the section was not unconstitutional, as we do now on the authority of that case.

Petitioners next contend that, even if Fred did change his method of accounting for purposes of section 481, he did not *initiate* the change and pre-1954 adjustments cannot be made. They say that for 1954 he merely complied with the requirement of section 446(a)[10] and reported in accordance with his books, and that the change was initiated by a legal requirement.

The legislative comments concerning section 29 of the Technical Amendments Act of 1958 do not contain a definition of "initiate" but the explanation of the House Ways and Means Committee[11] offers the following background:

> Generally, under the 1939 Code taxpayers who requested permission to change their method of accounting were required to make certain adjustments, in the year of change, to prevent income or expenses from being included or deducted more than once, or to prevent their omission entirely. However, where the Internal Revenue Service had required taxpayers to change their method of accounting, the courts generally did not require these adjustments to be made. Where the adjustments were made, the "bunching" of income which occurred in the taxable year of change frequently resulted in an especially heavy tax burden.
>
> Section 481 of the 1954 Code for the first time provided statutory rules with respect to these adjustments. This section requires these adjustments to be made in full to the extent that they are attributable to 1954 or a subsequent year. However, no adjustments are required which are attributable to years before the application of the 1954 Code.
>
> Your committee sees no reason why the pre-1954 Code year adjustments should not be made, when taxpayers, of their own volition, have changed their method

---

[10] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

[11] To the same effect, see S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 44, 45 (1958), 1958–3 C.B. 965, 966.

of accounting. This was, in fact, generally the practice under the 1939 Code. Your committee recognizes, however, the need to prevent the "bunching" of taxable income in these cases. This was recognized in practice under the 1939 Code when, administratively, provision was made for the spreading of some adjustments over a long period of time.

This bill does not affect present law with respect to pre-1954 adjustments where the change in method of accounting is not initiated by the taxpayer. Where the change is initiated by the taxpayer, the adjustments, to the extent attributable to years before 1954, must be made in computing taxable income, but they may spread over a period of as much as 10 years.

Changes in methods of accounting initiated by the taxpayer include a change in method of accounting which he originates, by requesting permission of the Commissioner to change, and also cases where taxpayer shifts from one method of accounting to another without the Commissioner's permission. A change in the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not, however, be considered as initiated by the taxpayer. [H. Rept. No. 775, 85th Cong., 1st Sess., pp. 19, 20 (1957), 1958-3 C.B. 829, 830.]

The Senate Finance Committee report adds the following:

Testimony before your committee has suggested that the primary concern with the proposed revision of section 481 has been with its application to those cases where taxpayers have already changed their method of accounting in some year from 1954 up to 1958. In some cases taxpayers have made these changes without obtaining the consent of the Treasury Department. Moreover, they have made these changes on the assumption that no adjustment need be made to the extent it is attributable to periods prior to 1954. * * * [S. Rept. No. 1983, 85th Cong., 2d Sess., pp. 48, 49 (1958), 1958-3 C.B. 969, 970.]

The foregoing examples of "initiate" do not offer a precise answer to whether a taxpayer, without direction from a revenue agent and absent a determination by respondent, "initiates" a change of method for purposes of section 481 when he changes his method of computing taxable income in compliance with the requirement of section 446(a). Nor do the provisions of section 1.481-1(c)(5), Income Tax Regs., which are as follows, provide an answer:

A change in the method of accounting initiated by the taxpayer includes not only a change which he originates by securing the consent of the Commissioner, but also a change from one method of accounting to another made without the advance approval of the Commissioner. A change in the taxpayer's method of accounting required as a result of an examination of the taxpayer's income tax return will not be considered as initiated by the taxpayer. On the other hand, a taxpayer who, on his own initiative, changes his method of accounting in order to conform to the requirements of any Federal income tax regulation or ruling shall not, merely because of such fact, be considered to have made an involuntary change.

It will be noted that the examples given in the foregoing regulations are taken from the committee reports except that the Treasury Department has also provided that a change on the taxpayer's own initiative to conform to an income tax regulation or ruling shall not, absent other factors, be considered an "involuntary change." The regulations

equate a change "initiated" by the taxpayer as one which is "voluntary" on his part. See also sec. 1.481–1(c)(2), Income Tax Regs. On the other hand, the committee reports use the word "initiate" as being synonymous with "originate."

We assume that the word "initiated" was deliberately chosen by Congress and that we must give it its commonly accepted meaning in the light of the context in which it is used. "Initiate" is defined in Webster's New International Dictionary (2d ed. 1950) : "To introduce by a first act; to make a beginning with; to originate; begin." In the light of the reason for the amendment as stated in the committee reports quoted above and the language used in those reports, we think Congress was more concerned with who was the movant in making the change rather than why the change was made. To interpret the provision in the manner requested by petitioners would give an advantage to the taxpayer who had deliberately kept his books or reported income on the wrong method and then chose the year 1954 to correct his error to conform to the law. We find nothing to support or justify such an interpretation.

Petitioners rely on *Lindner* v. *United States*, — F. Supp. — (D. Utah 1961), for the proposition that Fred did not "initiate" the change here involved. In that case, the taxpayers, as partners, maintained their books and filed their returns on the cash method until they were advised by a revenue agent in the course of an audit of their books that they were required to change to the accrual method. They changed both the method of keeping the partnership books and their method of reporting as a direct result of the examining officer's statements. Had it not been for the agent's direction to change accounting methods, the taxpayers would not have made the change. Under such circumstances, the District Court held that adjustments attributable to pre-1954 tax years were not authorized by section 481, as amended, because the taxpayers had not "initiated" the change in accounting for purposes of section 481(a)(2), as amended. The court recited the committee reports to which we have referred, in which "initiate" was treated as "originate," and found that Congress intended the term "initiate" to have ordinary meaning in the context of section 481.

*Lindner* v. *United States, supra*, in contrast to petitioners' argument, would seem to support our conclusion that Fred "initiated" the change in controversy because he originated it. Fred took the first step to set the change in motion; without direction from an agent of respondent, he commenced the change. We hold that on the facts of this case, Fred "initiated" the change in method of computing taxable income, within the meaning of section 481(a)(2), as amended, and that the necessary adjustments with respect to pre-1954 years may be made.

This conclusion brings us to petitioners' next argument. As they express the argument on brief, their contention is:

If this Court determines that taxpayer is subject to tax under section 481 of the Code as amended by Section 29 of the [Technical Amendments] Act of 1958, then the transitional adjustment is limited to the net total of those items of income which had not been taxed prior to January 1, 1954.

From 1937 through 1940, and from 1943 through 1949,[12] Fred filed returns reporting income on a cash basis except that he used inventories. For the taxable year 1949, he reported an opening inventory of $30,673.03 and a closing inventory, which served to reduce costs of goods sold as a deduction from sales, in the amount of $34,017.51. This closing inventory for 1949 should properly have served as the opening inventory for 1950, but Fred, who did not use inventories in computing taxable income for the taxable years 1950, 1951, 1952, or 1953, did not so treat it on his 1950 return. As a consequence, contend petitioners, Fred's closing inventory for 1949 was improperly excluded from his return for 1950 and thus Fred failed to receive a tax benefit from it, or as they express it, the item did not escape taxation.

Further, it appears that Fred's return for the taxable year 1947 was the subject of an examination by an agent of respondent. The examining officer determined that Fred reported for 1947 on a cash basis, except that he used inventories, and that Fred included in both opening and closing inventories for 1947, goods which had not been paid for.[13] The agent compared accounts payable pertaining to merchandise at the beginning of the year with such accounts payable at the end of the year and found the difference to be $3,132.03. He added this decrease in such accounts payable to taxable income for 1947.[14] The net effect was to decrease reported opening inventory by a greater amount than closing inventory had been decreased and thereby to reduce costs of goods sold as reported. Fred paid the deficiency which resulted from this and from other adjustments.

By reason of these facts, petitioners argue that the transitional adjustment authorized by section 481, as computed by respondent in

---

[12] Retained copies of Fred's returns for 1941 and 1942 are unavailable, and the filed originals have been destroyed by respondent.

[13] Testimony of the agent indicates that he considered Fred to have reported income for 1947 on "sort of a hybrid basis," by which he meant that Fred used inventories but otherwise reported income and deductions (including sales and purchases) on a cash basis.

[14] Workpapers attached to the examining officer's report for 1947 show the decrease in such accounts payable to have been $3,132.63, but the adjustment was in the amount of $3,132.03. The examining officer made no adjustment with respect to accounts receivable and did not otherwise force Fred to the accrual method of reporting. The workpapers also show that accounts payable pertaining to merchandise increased from $4,596.16 at the beginning of 1946 to $14,961.63 at the end of 1946, and if an adjustment had been similarly made for 1946, the result would have been a decrease in income for that year and probably the determination of an overassessment. We are not advised whether such an adjustment was made for 1946.

the net total amount of $177,683.27, should be reduced by the amount of $34,017.51, representing the closing inventory for 1949 that was not utilized as an opening adjustment for 1950 and by the amount of $3,132.03, representing the adjustment to income made by the examining officer for 1947. They say that to the extent of $37,149.54, the total of the two foregoing adjustments, inventory at December 31, 1953, has not escaped taxation. As we understand petitioners' contention, they are attempting, by computation of a transitional adjustment under section 481, to recoup tax paid by reason of erroneous—or at least inconsistent—treatment of inventory in prior years.

Were we concerned with the *basis* of inventory in the hands of a predecessor taxpayer, there may be merit to petitioners' contention. See *Ezo Products Co.*, 37 T.C. 385 (1961), on appeal (C.A. 3, Mar. 5, 1962), and cases cited therein. But we are dealing with the adjustments authorized by a Code provision with respect to a year of change of accounting method. There are to be taken into account only those adjustments "which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted." Section 481 does not provide a means by which errors of past years may be corrected; it applies only to those adjustments made necessary by the taxpayer's change in method. Since Fred's change was in the taxable year 1954, those adjustments are with respect to inventory, accounts receivable, and accounts payable at December 31, 1953, and we find no authority in section 481 to relate Fred's closing inventory for 1953 to his closing inventory for 1949 or 1947.

Petitioners' argument, if sustained, would logically require an examination of every taxable year that Fred has been in business, since it appears that the sale of merchandise has always been an income-producing factor. Section 481 would have to be interpreted as permitting the correction of errors long since ordinarily barred by the statute of limitations. We do not believe that section 481 sanctions such corrections, even if they could be accurately determined.

Furthermore, petitioners have not proved that the entire cost of Fred's inventory in the amount of $93,935.59, as shown on his books at December 31, 1953, was not deducted in 1953 or prior years in accordance with Fred's cash method of reporting. Presumably the cost of the inventory was so deducted, and petitioners do not contend that it was not. If such is the case, respondent's proposed adjustment with respect to 1954 opening inventory is necessary to prevent the duplication of a deduction, without regard to what the erroneous treatment of inventory may have been in 1947 or 1949.

We conclude that respondent's proposed net adjustment to income in Fred's year of change is correct, and that the additional income resulting from the net adjustment is to be spread over a 10-year

period, with one-tenth of the amount of $177,683.27 being taken into account in each of the years 1954 through 1958. This brings us to petitioners' final contention, raised by amendment to the petition.

Petitioners argue that the assessment of a deficiency for the taxable year 1954 is barred by the statute of limitations. Petitioners filed their 1954 return on April 14, 1955. Respondent's determination of a deficiency herein was made on February 24, 1960, and absent the execution of agreements extending the statute of limitations, petitioners' argument would have merit, since respondent relies only on such agreements to extend the statutory period for determination of a deficiency for 1954. Both agreements, the first executed in December 1957 and the second in December 1958, provided "That the amount of any income * * * taxes due under any return (or returns) made by or on behalf of [petitioners] for the taxable year ended December 31, 1954, *under existing acts, or under prior revenue acts*, may be assessed at any time on or before June 30, 1959" (extended to June 30, 1960, under the second agreement). (Emphasis supplied.)

The Technical Amendments Act of 1958, which first authorized pre-1954 adjustments, was enacted September 2, 1958. Petitioners maintain generally that the first agreement, executed in 1957, does not permit an assessment based upon legislation enacted subsequent to the execution of the agreement; and that the proposed assessment is not timely under the second agreement because "when the second waiver was executed on December 9, 1958, no rights or liabilities then existed under the Act of 1958 which could be the subject of an extension."

Petitioners rely upon the case of *Toxaway Mills* v. *United States*, 61 Ct. Cl. 363 (1925), and upon language from *Chadbourne & Moore, Inc.*, 16 B.T.A. 1054 (1929), to sustain their position. We do not think either of these cases requires the conclusion urged by petitioners.

In *Toxaway Mills* v. *United States, supra,* the Court of Claims actually held that the taxpayer could not recover from the Government additional taxes alleged to have been assessed and collected after the statute of limitations had run because taxpayer had failed to prove an overpayment of tax. While the validity of a waiver executed prior to enactment of a statute authorizing waivers was discussed by the court in its opinion, we cannot find that it reached any conclusion with respect thereto. Furthermore, in this case, apparently unlike the situation in *Toxaway Mills*, there was no change in the statutory provisions regarding consents.

In *Chadbourne & Moore, Inc., supra,* the taxpayer executed waivers for the taxable years 1919 and 1920 prior to the enactment of the Revenue Act of 1926 which extended the time for assessment of tax due for 1919 and 1920 under existing or prior revenue Acts to De-

cember 31, 1926. The Commissioner determined deficiencies for 1919 and 1920 after the effective date of the Revenue Act of 1926 but computed on the basis of an agent's report made before the effective date of that Act. Taxpayer argued that it had not consented to an extension except under existing law and that the Revenue Act of 1926 "changed the provisions under which petitioner's liability might be calculated, changed the method by which it might be assessed and collected, and changed the procedure, jurisdiction and organization of the Board of Tax Appeals and of the Courts." The Board found that the assessment was made under the Revenue Act of 1921 and that the waivers were valid and respondent's determination timely. In the course of its opinion it was stated:

> The waivers filed by the petitioner grant to the Commissioner no rights of assessment and collection beyond those contained in the Revenue Act of 1924, and prior acts, or in waivers already on file in the Bureau, and they expired by express limitation on December 31, 1926. If, therefore, the Commissioner had determined the asserted deficiency and proposed to assess the tax under the provisions of the Revenue Act of 1926, we might be constrained to hold that the waivers here in question were not effective to convey such authority. * * * [16 B.T.A. 1057.]

While the foregoing language, upon which petitioners strongly rely, appears to have been dictum in that case, the case is also distinguishable on its facts. There the only waiver extant was one executed prior to enactment of the Revenue Act of 1926 and permitted assessment of the tax under the law existing when the waiver was executed. Here the second waiver was executed while the period of limitation was still open under the first waiver and after enactment of the Technical Amendments Act of 1958. The language of the second waiver would clearly permit assessment under the 1958 Act and the parties are presumed to know what they were doing when this waiver was executed.

The consents executed by the parties herein have statutory sanction and recognition by section 6501(c)(4)[15] which provides that the taxpayer and the Secretary of the Treasury or his delegate may consent in writing to extend the statutory period for assessment and that such "period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon." The statute refers only to time, and leaves the parties free to decide for themselves the terms on which an extension will be granted. The time within which an assessment could be made or another extension granted was still open when the second waiver was

---

[15] SEC. 6501(c)(4) EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

executed, and the statutory notice of deficiency was mailed to petitioners prior to the expiration of the period fixed in the second waiver. Petitioners do not claim that a mistake was made or that they did not understand the purport of the second waiver. We perceive no reason why the terms of the second agreement should be limited by the terms of the first agreement. Compare *H. R. Cullen*, 41 B.T.A. 1054 (1940), reversed on another issue 118 F. 2d 651 (C.A. 5, 1941).

We hold respondent's determination with respect to the year 1954 to be timely.

*Decision will be entered for the respondent.*

