SAMUEL SWARTZ AND MARY SWARTZ, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
WILLIAM J. SKLAN AND MOLLIE SKLAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3146-62, 3408-62.   Filed August 10, 1964.

*Edward I. Goldberg*, for the petitioners in docket No. 3146-62.
*A. M. Wiggins, Jr.*, for the petitioners in docket No. 3408-62.
*Lawrence L. Wilson*, for the respondent.

### OPINION

BLACK, *Judge:* The Commissioner determined deficiencies in petitioners' income tax for the year 1957 as follows:

| Docket No. | Petitioners | Amount |
|---|---|---|
| 3146-62 | Samuel Swartz and Mary Swartz | $10,964.30 |
| 3408-62 | William J. Sklan and Mollie Sklan | 12,148.75 |

---

The issues in each case are identical because they relate solely to adjustments to the income of a partnership in which Samuel and William are the only partners. Certain minor adjustments made by respondent are not disputed by petitioners. Petitioners do dispute the major portions of the above deficiencies which are attributable to the application by respondent of section 481, I.R.C. 1954, as amended, to the partnership income in the year 1957. This is the principal issue.

The issues raised by the pleadings are:

■ Whether petitioners changed their method of accounting in 1957 within the meaning of section 481 and, if so, whether they initiated the change within the meaning of section 481(a)(2).

■ Whether, in making adjustments pursuant to section 481(a), respondent allowed a reasonable deduction for additions to reserves for bad debts of the partnership in which each husband-petitioner held a one-half interest.

Samuel and William have conceded the correctness of respondent's disallowance of the following claimed deductions in 1957 by the partnership in which each held a one-half interest:

| | |
|---|---|
| Automobile expenses | $600.00 |
| Health and accident insurance | 429.40 |

Effect will be given to these concessions in a computation under Rule 50.

By motion duly granted at the hearing these proceedings were consolidated.

The evidence consists of a stipulation of facts, with exhibits attached thereto, which is incorporated herein by this reference. There was no oral testimony.

Samuel and Mary Swartz are husband and wife and reside in Pittsburgh, Pa. William J. and Mollie Sklan are husband and wife and reside in Pittsburgh, Pa. Mary and Mollie are involved in these proceedings only because they filed joint income tax returns with their husbands; for convenience, reference is made only to Samuel and William.

The Mutual Furniture Co., hereinafter referred to as the partnership, was organized on May 3, 1937, as a partnership. Since that time and throughout the years involved herein, Samuel and William each held a one-half interest in the partnership.

During 1957 and all prior years, the partnership was engaged in the business of selling furniture, household furnishings, and appliances, mostly at retail in Pittsburgh. Most of the sales were on an installment basis or a short-term credit basis. Since the beginning of the partnership and through the year 1957, merchandise purchases were contracted for on a credit basis.

Since the beginning of the partnership and at all times involved herein, the accrual method of accounting was used in keeping the books of the partnership, which books were kept on a calendar year basis.

For purposes of Federal income taxes, the partnership information returns (Form 1065) filed for the year 1956 and all prior years with the district director of internal revenue at Pittsburgh, reported sales and purchases of merchandise on the cash receipts and disbursements basis; deductions were reported on the accrual basis in conformity with the partnership books.

For the calendar year 1956 and prior years, Samuel and William each filed his Federal income tax returns (Form 1040) with the district director of internal revenue at Pittsburgh, with each reporting his distributive share of the partnership income or loss of a given year as shown on the partnership information return filed for such calendar year.

On or about March 24, 1958, the partnership filed with the district director its Form 1065 information return for the calendar year 1957 reporting income thereon computed on the accrual method of accounting in conformity with the partnership books. On or about March 24, 1958, Samuel and William each filed with the district director his Federal income tax return (Form 1040) for the calendar year 1957 reporting the distributive share of the partnership income of each as that reported in Form 1065 of the partnership for 1957.

On March 24, 1958, the district director received from the partnership Forms 1065 relating to the years 1954, 1955, and 1956 and each such Form 1065 was marked "Amended Return" and showed taxable income or loss computed on the accrual method of accounting in conformity with the partnership books. On the same day, the district director received from both Samuel and William, Forms 1040 covering the years 1954, 1955, and 1956 and each such Form 1040 was marked "Amended Return" showing the distributive share of income or loss from the partnership as that shown on the respective Form 1065 of the partnership marked "Amended Return."

On March 24, 1958, Samuel and William each filed a claim for refund (Form 843) for the year 1954 which stated that the claims were protective in nature and were to cover any excessive taxes assessed in 1954 because of having reported partnership income on the cash receipts and disbursements basis rather than the accrual basis. Samuel and William each filed a claim for refund (Form 843) for the year 1955 on April 6, 1959, and April 3, 1959, respectively, which stated, in part, as follows:

The claim made * * * is protective in character, and is * * * to obtain any refund * * * for the year 1955 with respect to [Samuel's or William's] distributive share of partnership net income that would result from the partnership being required to use the cash receipts method of accounting for that year.

On March 17, 1959, and on or about July 18, 1959, respondent rejected Samuel's claims for refund for years 1954 and 1955, respectively. On March 24, 1959, and July 17, 1959, respondent rejected William's claims for refund for the years 1954 and 1955, respectively. Neither Samuel nor William prosecuted appeals of the rejection of their refund claims.

The partnership, Samuel, and William neither requested nor received permission of respondent to change their method of accounting employed in reporting income for purposes of Federal income taxation.

On the 1957 partnership information return cost of goods sold was computed by using a beginning inventory of $135,714.39. At December 31, 1956, the partnership had accounts receivable of $314,233.86 which represented sales not reported as income by the partnership for years prior to 1957 when such sales were made; such accounts receivable were not reported as income on the 1957 partnership return. At December 31, 1956, the partnership had accounts payable of $47,062.52 which represented purchases of merchandise not deducted on the partnership returns filed for years prior to 1957; they were not deducted on the partnership return for 1957.

Each of the Form 1065 partnership information returns marked "Amended Return" relating to the years 1954, 1955, and 1956 shows cost of goods sold computed with the use of opening and closing inventories. Form 1065 marked "Amended Return" relating to 1954 did not include as income the accounts receivable at December 31, 1953, which represented partnership sales of years prior to 1954 not reported in income when such sales were made; such accounts receivable were not included as income on either of the Forms 1065 marked "Amended Return" relating to the years 1955 and 1956. Purchases of merchandise represented by accounts payable at December 31, 1953, were not deducted on Form 1065 marked "Amended Return" relating to 1954.

The accounts receivable, merchandise inventory, and accounts payable shown by the partnership books at the beginning of each of the years 1954 to 1957, inclusive, are as follows:

| Year | Accounts receivable | Inventory | Accounts payable |
|------|------|------|------|
| 1954 | $291,890.08 | $125,508.97 | $68,501.79 |
| 1955 | 280,980.10 | 122,141.60 | 53,240.63 |
| 1956 | 303,654.23 | 137,701.55 | 72,702.48 |
| 1957 | 314,233.86 | 135,714.39 | 47,062.52 |

Respondent examined the partnership information returns filed for 1954, 1955, and 1956; losses shown on such returns for 1955 and 1956 were increased, and no change was made on the 1954 return. None of the changes made by respondent were attributable to a change in method of accounting. By letter dated December 10, 1958, re-

spondent notified the partnership of the foregoing changes and, in reference to the partnership Forms 1065 marked "Amended Return" relating to each of the years 1954, 1955, and 1956, stated:

The amended returns, changing method of reporting income are rejected because the permission of the Commissioner to change was not applied for within the period prescribed by regulations and agreement was not reached as to the adjustments necessary to effect such change.

Samuel and William, on the respective dates of March 17, 1959, and March 24, 1959, were informed by respondent's letters of changes made on the 1955 and 1956 returns of each as a result of the increases of losses shown on the partnership returns for the same years, and each letter stated that Forms 1040 marked "Amended Return" relating to the years 1954, 1955, and 1956 were rejected because Forms 1065, partnership information returns, marked "Amended Return" relating to the same years were rejected.

No consent extending the period of limitation upon assessment of income tax for the year 1954 was obtained from Samuel or William and both declined to comply with respondent's request on or about January 6, 1959, to execute such a consent for the year 1955.

In determining the deficiencies involved herein against Samuel and William by reason of adjustments made under section 481, respondent allowed a reserve for bad debts for each of the years 1954 through 1957 which was equal to 2½ percent of the partnership accounts receivable existing at the beginning of each year, which allowances reduced the accounts receivable in each year for purposes of making the adjustments. Such percentage was allowed after a study was made by respondent's examining agent of the partnership bad debt experience, as shown by its books, from 1950 through 1957. The study made by the examining agent covering such years is marked Exhibit L attached to the stipulation and is as follows:

*Mutual Furniture Co., Analysis of Bad Debt Experience*

| | Charge sales | Rate carried to reserve (percent) | Credits to reserve for bad debts | Accounts charged off | Recoveries of charged-off accounts |
|---|---|---|---|---|---|
| Dec. 31, 1950 | $263,367.78 | 4 | $10,534.70 | $11,887.81 | $2,821.36 |
| Dec. 31, 1951 | 282,028.39 | 3½ | 9,870.99 | 9,945.41 | 2,277.41 |
| Dec. 31, 1952 | 230,486.68 | 3 | 6,914.60 | 11,658.00 | 2,459.29 |
| Dec. 31, 1953 | 335,431.26 | 4 | 13,417.25 | 12,270.93 | 2,602.31 |
| Dec. 31, 1954 | 333,746.95 | | 6,814.37 | 8,935.24 | 2,189.65 |
| Dec. 31, 1955 | 355,719.48 | 2 | 7,114.38 | 8,233.74 | 2,167.97 |
| Dec. 31, 1956 | 399,352.37 | 2 | 7,987.05 | 7,261.53 | 1,663.43 |
| Dec. 31, 1957 | 430,056.27 | 1 | 4,300.56 | 3,482.63 | 1,900.02 |
| Total | 2,630,189.18 | | 66,953.90 | 73,675.29 | [1] 18,079.44 |
| Dec. 31, 1958 (3-month sales) | 51,320.89 | ½ × A.R. bal | 27,900.33 | 20.00 | 1,287.97 |
| Dec. 31, 1959 | | | | 82.05 | 803.26 |
| Accounts charged off—8 years= | | | | | 73,675.29 |
| Less: Recoveries= | | | | | [1] 18,079.44 |
| Net | | | | | 55,595.85 |

$$\frac{\text{Net bad debts}}{\text{Sales}} \quad \frac{\$55,595.85}{\$2,630,189.18} = 2.1\% = \text{Experience}$$

[1] The correct total of this column is $18,081.44

Exhibit 15 attached to the stipulation of facts reads as follows:

*Mutual Furniture Co., Summary of Account Entries*

| As of December 31— | No. 1 Charge sales | No. 2 Accounts receivable | No. 3 Reserve for bad debts | No. 4 Credits to reserve | No. 5 Accounts charged off | No. 6 Recoveries of accounts charged off |
|---|---|---|---|---|---|---|
| 1953 | $335,431.26 | $291,890.08 | $26,358.35 | $13,417.25 | $12,270.93 | $2,602.31 |
| 1954 | 333,746.95 | 280,980.10 | 24,237.48 | 6,814.37 | 8,935.24 | 2,189.65 |
| 1955 | 355,719.48 | 303,654.23 | 23,118.12 | 7,114.38 | 8,233.74 | 2,167.97 |
| 1956 | 399,352.37 | 314,233.86 | 23,843.64 | 7,987.05 | 7,261.53 | 1,663.43 |
| 1957 | 430,056.27 | 322,467.84 | 24,661.57 | 4,300.56 | 3,482.63 | 1,900.02 |
| 1958 | 51,320.89 | 157,625.69 | 24,641.57 | 0 | 20.00 | 1,287.97 |
| 1959 | 0 | 81,437.62 | 24,559.52 | 0 | 82.05 | 803.26 |
| 1960 | 0 | 47,673.03 | 24,559.52 | 0 | 0 | 545.94 |
| 1961 | 0 | 33,299.49 | 24,559.52 | 0 | 0 | 64.33 |
| 1962 | 0 | 26,912.09 | 24,559.52 | 0 | 0 | 126.60 |
| 1963 | 0 | 23,490.68 | 24,559.52 | 0 | 0 | 67.11 |

Samuel and William each initiated a change in his method of accounting in 1957, the year of change of each, within the meaning of section 481.

### Issue 1

This issue involves the question of whether petitioners changed their method of accounting in 1957 within the meaning of section 481 and, if so, whether they initiated the change within the meaning of section 481 (a) (2).

It is respondent's contention and he has so determined in his deficiency notice that taxable income from Samuel's and William's distributive shares of partnership income for the taxable year 1957 was computed under a method of accounting different from the method of accounting used for the taxable year 1956 within the meaning of section 481 (a) ; that such changes in the method of accounting were initiated by Samuel and by William for their partnership within the meaning of section 481 (a) (2) ; and that solely by reason of such changes it is necessary to make adjustments to accounts receivable, inventories, and accounts payable of the partnership pursuant to section 481 (a) in order to prevent items of income and expense from being duplicated or omitted. The applicable statute is printed in the margin.[1]

We think respondent must be sustained as to issue 1.

In *Fred P. Pursell*, 38 T.C. 263 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963), we had before us for decision what we regard

---

[1] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

as essentially the same question as we have here for decision. In deciding that issue in favor of the Commissioner we said:

Petitioners rely on *Lindner* v. *United States*, —— F. Supp. —— (D. Utah 1961), for the proposition that Fred did not "initiate" the change here involved. In that case, the taxpayers, as partners, maintained their books and filed their returns on the cash method until they were advised by a revenue agent in the course of an audit of their books that they were required to change to the accrual method. They changed both the method of keeping the partnership books and their method of reporting as a direct result of the examining officer's statements. Had it not been for the agent's direction to change accounting methods, the taxpayers would not have made the change. Under such circumstances, the District Court held that adjustments attributable to pre-1954 tax years were not authorized by section 481, as amended, because the taxpayers had not "initiated" the change in accounting for purposes of section 481(a)(2), as amended. The court recited the committee reports to which we have referred, in which "initiate" was treated as "originate," and found that Congress intended the term "initiate" to have ordinary meaning in the context of section 481.

*Lindner* v. *United States*, *supra*, in contrast to petitioners' argument, would seem to support our conclusion that Fred "initiated" the change in controversy because he originated it. Fred took the first step to set the change in motion; without direction from an agent of respondent, he commenced the change. We hold that on the facts of this case, Fred "initiated" the change in method of computing taxable income, within the meaning of section 481(a)(2), as amended, and that the necessary adjustments with respect to pre-1954 years may be made.

It is true that on or about the same time petitioners filed their 1957 returns in which they changed their method of reporting income from the cash basis to the accrual basis, they filed amended returns for the years 1954, 1955, and 1956, making changes from the cash basis of reporting income to the accrual basis of reporting income, but we think that the filing of amended returns in the manner which the facts show they were filed does not make a valid distinction between the instant case and the *Fred P. Pursell* case.

We have a finding of fact which reads:

By letter dated December 10, 1958, respondent notified the partnership of the foregoing changes and, in reference to the partnership Form 1065 marked "Amended Return" relating to each of the years 1954, 1955, and 1956, stated:

The amended returns, changing method of reporting income are rejected because the permission of the Commissioner to change was not applied for within the period prescribed by regulations and agreement was not reached as to the adjustments necessary to effect such change.

It seems clear to us that the changeover from the method of reporting income on the cash basis to the accrual basis was not made with the permission of the Commissioner but was initiated by the petitioners. Therefore, we think that our decision in *Fred P. Pursell, supra*, is applicable and on this issue we sustain the Commissioner.

*Issue 2*

Petitioners raise the following alternative issue:

In the alternative, if the Court determines that adjustments are necessary in 1957 under section 481, did respondent use an improper method in determining the reasonable reserves for bad debts included in such adjustments?

Petitioners used the reserve method for bad debt deductions. Section 166(c) of the 1954 Code is the applicable provision with respect to this issue and it reads:

(c) RESERVE FOR BAD DEBTS.—In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts.

In *R. Gsell & Co.*, 34 T.C. 41 (1960), we said (p. 56):

Section 23(k)(1) of the 1939 Code permits a deduction from income, in the discretion of the Commissioner, of a reasonable addition to a reserve for bad debts. Great latitude is extended the Commissioner in exercising that discretion; and the burden of establishing an abuse of discretion falls heavily upon the taxpayer. *Union National Bank & Trust Co. of Elgin*, 26 T.C. 537 (1956).

The only evidence which we have on this issue is Exhibit L which is embodied herein and represents respondent's contention as to the reasonableness of the deductions to be allowed as reserves for bad debts and Exhibit 15, also embodied herein, which represents petitioners' contention as to the deductible additions to the reserves for bad debts. The deductions allowed by the Commissioner in his determination of the deficiencies are:

| Year: | Amount |
|---|---|
| 1954 | $7,297.00 |
| 1955 | 7,024.02 |
| 1956 | 7,591.35 |
| 1957 | 7,855.85 |

Petitioners, as we understand their brief, contend for a minimum "Reserve for Bad Debts" as of December 31 of each year, as follows:

| Year: | Amount |
|---|---|
| 1954 | $19,854.15 |
| 1955 | 18,734.79 |
| 1956 | 19,460.31 |
| 1957 | 20,278.24 |

And they contend that these latter amounts should be allowed as deductions in the respective taxable years instead of the amounts determined by the Commissioner in his deficiency notices.

There is a well-known rule as to the presumptive correctness of the Commissioner's determination and so far as we can see there is no evidence in the record which shows that the Commissioner's determination is incorrect and that petitioners have discharged their bur-

den of proof in showing that it is incorrect. Therefore, as to this alternative contention, we hold for the Commissioner.

*Decisions will be entered under Rule 50.*