JOSEPH F. LAUINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 63098. Filed January 30, 1959.

*Nathan Korn, Esq.*, for the petitioner.
*Charles M. Greenspan, Esq.*, for the respondent.

WITHEY, *Judge:* The respondent determined a deficiency in petitioner's income tax liability for 1947 in the amount of $7,953.82. By amended answer the Commissioner claims an increase in the deficiency of $1,232.54.

The sole issue presented for our decision is the correctness of the respondent's assertion that the petitioner realized income during 1947 which he omitted from gross income in his return for that year in the amount of $19,817.07, representing the cash surrender value of a retirement income life insurance policy transferred to him by the trustees of the pension trust of the Conlan Electric Corporation.

### FINDINGS OF FACT.

A joint income tax return for the year 1947 was filed by the petitioner with the director of internal revenue for the first New York district on March 15, 1948. The return was prepared on a cash basis and disclosed gross income for 1947 in the amount of $12,764.26.

Petitioner and the respondent executed successive waivers extending the time prescribed for the assessment of deficiency for 1947, under section 275(c) of the Internal Revenue Code of 1939, to June

30, 1956. The deficiency determined by the respondent in petitioner's income tax liability for 1947 was asserted in a statutory notice of deficiency issued on March 22, 1956.

The petitioner was first associated with the Conlan Electric Corporation, sometimes hereinafter referred to as Conlan, shortly after the close of World War I. As of 1942, he and his brother, George Lauinger, each owned one-half of the stock of that corporation. Petitioner was the president of Conlan from 1942 until 1952.

On or about December 12, 1942, Conlan established a noncontributory pension plan for the benefit of its employees. All of the contributions to this trust, including the payment of premiums, were made by Conlan. This plan was ruled by the respondent to be exempt under the provisions of section 165 (a) of the 1939 Code.

In 1942 the trustees of the Conlan Electric Corporation Pension Trust took out a retirement income life insurance policy with the Home Life Insurance Company of New York, naming the petitioner as the insured. Under the terms of this policy his life was insured for $49,000 and, upon attaining age 65, he was to receive $490 per month for life. Further, the insurer was obligated to continue such monthly payments in any event for a period of 10 years from the time at which the insured attained the age of 65. Early in January 1947, the Home Life Insurance Company received a request for forms from the trustees of the Conlan pension trust to enable them to transfer the ownership of the policy to petitioner. The form was executed by the trustees on January 7, 1947, and provided, in part, as follows:

#### OWNERSHIP PROVISION

Anything in this policy to the contrary notwithstanding, the insured shall be the owner of this policy and may, without the consent of any beneficiary not irrevocably designated, exercise any option, enjoy any privilege and receive any benefit whatsoever contained in this policy.

The records of the Home Life Insurance Company disclose that on January 8, 1947, the ownership of the policy was transferred from the trustees of the Conlan pension trust to the insured, pursuant to the request executed by the trustees on January 7, 1947. The cash surrender value of the policy on January 8, 1947, was $19,817.07.

The petitioner withdrew from the active employ of Conlan in 1946, but returned in 1947 and continued thereafter to serve as its president. On April 24, 1947, he, as president of Conlan, executed an amendment to the trust agreement of the Conlan pension trust which provided as follows:

ARTICLE X is amended as follows:

Section V: The Trustees shall transfer and deliver all contracts to participants hereunder, freed and discharged of all of the terms and conditions of the Trust when such participant leaves the employ of the company or voluntarily

ceases to be a participant under the trust provided he has been, at such time, a participant under the trust for at least three years.

The foregoing amendment and provision is hereby made effective as of the 12th day of December, 1946.

This amendment was filed with and accepted by the respondent.

On January 9, 1947, petitioner obtained a loan from the Home Life Insurance Company for $25,284, an amount equal to the cash surrender value of the policy as of December 15, 1947. After deducting the amount of the premium for 1947, in the amount of $6,999.16, and interest on the loan for that year, in the amount of $1,122.03, the petitioner received a check for $17,477.88 from the Home Life Insurance Company, representing the cash proceeds of the loan plus dividends in the amount of $315.07. The check so received was deposited by petitioner to the account of Conlan Electric Corporation and was never repaid.

The policy was continued in force through 1949.

### OPINION.

The respondent has determined that the cash surrender value of the retirement income life insurance policy issued by the Home Life Insurance Company and transferred to the petitioner by the trustees of the Conlan Electric Corporation Pension Trust on January 8, 1947, represents ordinary income taxable to him for that year.[1] It is undisputed that no part of the cash surrender value of this policy in the amount of $19,817.07 was included in gross income as reported by him on his return for 1947, and that this amount exceeds 25 per cent of the gross income so reported.

The petitioner takes the position that he was merely the conduit through which the corporation received a return of its own funds which previously had been expended as contributions to its pension trust. He, therefore, contends that he received nothing as the result of the transaction.

Section 165(b) of the 1939 Code, which covers the taxability of the beneficiaries of stock bonus, pension or profit-sharing trusts, provides that:

The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available * * *

The petitioner clearly acquired the ownership of the retirement income life insurance policy here in question on January 8, 1947, and became

---

[1] In his statutory notice of deficiency, the respondent determined that the proceeds of the loan plus dividends in the aggregate amount of $17,477.88 represented unreported income. In his amended answer, however, the respondent asserted that petitioner realized unreported income for 1947 in the amount of the cash surrender value of the policy at the time of receipt, or $19,817.07, and claimed an increased deficiency. On brief, he has abandoned the position taken by him in his notice of deficiency.

entitled to the cash surrender value thereof in the amount of $19,817.07. On January 9, 1947, he borrowed $25,284 from the Home Life Insurance Company against the policy here involved but withdrew only $17,477.88, leaving with the insurer an amount equal to the annual premium on the policy and the annual interest charge on the loan.

Although we are aware of no decision which is applicable to the situation here presented, and the parties have cited none, we are of the opinion that the total amount of the cash surrender value of the policy on the date of its receipt by the petitioner, or $19,817.07, represents a distribution from a pension trust under section 165(b) of the 1939 Code and therefore constitutes ordinary income taxable to him for 1947.[2]

There is no evidence in the record indicating that petitioner acted or intended to act merely as a conduit of Conlan funds without acquiring a right to the ownership of the policy. It is clear that on January 8, 1947, he obtained complete ownership of the policy including the right personally to withdraw its cash surrender value as well as the right to continue the policy in force and borrow against it, as he did. The acquisition of the insurance contract was the taxable event, not the receipt of the check representing the proceeds of the loan. Consequently, the fact that subsequently on January 9, 1947, he obtained a loan from the Home Life Insurance Company against the cash surrender value of the policy as of December 15, 1947, and deposited the proceeds of that loan to the account of Conlan, apparently as a capital contribution, is not material to the issue before us.

Section 165(b) of the 1939 Code also provides that the amount of the distribution taxable to the beneficiary shall be taxable "under section 22(b)(2) as if it were an annuity the consideration for which is the amount contributed by the employee." Inasmuch as none of the premiums on the policy involved to the date of its acquisition by him were contributed by the petitioner, the entire amount of the cash surrender value on the date he acquired the policy constitutes ordinary income taxable to him for 1947 under sections 165(b) and 22(b)(2) of the 1939 Code.

Since the amount of unreported income exceeds 25 per cent of petitioner's reported gross income for 1947 and since the respondent's statutory notice of deficiency was issued within the prescribed period

[2] Mim. 6461, 1950-1 C.B. 73:

(2) If a trust exempt under section 165(a) of the Code distributes an insurance contract to an employee so that part or all of its then value could be applied to continue insurance for him under such a contract, the value so applicable then loses its previous status as an accumulation to secure deferred benefits under a pension or profit-sharing plan, as to which inclusion in income has been deferred, and becomes a distribution of the trust which must be included in the income of the employee for the year in which the contract is distributed, as provided in section 165(b) of the Code, whether or not such value could then be obtained in cash by surrender of the contract. * * *

as extended pursuant to the execution of successive waivers, the petitioner is without grounds for his assertion that the assessment of a deficiency was barred by the expiration of the statute of limitations.

*Decision will be entered for the respondent.*