Joseph F. LAUINGER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 261, Docket 25699.

United States Court of Appeals Second Circuit.

Argued May 2, 1960.

Decided Aug. 15, 1960.

**420**

Nathan Korn, Brooklyn, N. Y. (Robert A. Morse, Julian Guy Linker, Brooklyn, N. Y.), for petitioner.

Charles B. E. Freeman, Dept. of Justice, Washington, D. C. (Charles K. Rice, Lee A. Jackson, I. Henry Kutz, Dept. of Justice, Washington, D. C.), for respondent.

Before LUMBARD, Chief Judge, MEDINA, Circuit Judge, and JAMESON, District Judge.*

JAMESON, District Judge.

Lauinger, the taxpayer, petitions to review an order of the Tax Court holding him liable for a deficiency in income tax for the year 1947.

In December, 1942, Conlan Electric Corporation created a non-contributory pension plan trust for its employees, including petitioner, who was president of Conlan and owner of one half of its stock. The pension plan was exempt from taxation under Section 165(a) of the Internal Revenue Code of 1939.[1]

The trustees of the pension trust purchased an insurance policy from Home Life Insurance Company of New York, in which petitioner was named as insured. Petitioner's wife was named as primary beneficiary and his children as secondary beneficiaries. The policy, called a "personal income at 65 policy" by the insurance company and a "retirement income life insurance policy" by the Tax Court and Commissioner, provided (1) that if petitioner died before attaining the age of 65, a death benefit of $49,000 would be payable to his beneficiaries; and (2) upon attaining the age 65, petitioner would receive $490 per month for life, and in the event of his death within 10 years, his beneficiaries would receive the monthly payments during the balance of the 10 year period.

The Tax Court found that "petitioner withdrew from the active employ of Con-

---

* Sitting by designation.

1. Sec. 165(a), Int.Rev.Code of 1939:
"(a) Exemption from tax. A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable * * *

(1) If * * * in accordance with such plan.
(2) if * * * impossible * * * for any part * * * to be used for, or directed to, purposes other than for the exclusive benefit of his employees or their beneficiaries."
(26 U.S.C.1952 Ed., § 165)

lan in 1946, but returned in 1947 and continued thereafter to serve as its president." In December of 1946, petitioner was informed that financial difficulties made it impossible for Conlan to continue to pay the annual premium on the insurance policy. On December 15, 1946, petitioner, as president of Conlan, executed an amendment to the trust which would have permitted the trustees to transfer the policies of insurance to the respective participants. This amendment was not approved by the Commissioner. On April 24, 1947 another amendment was executed by petitioner as president of Conlan, authorizing the trustees to transfer the policies to the participants, free of the terms and conditions of the trust, when the participants either left the employ of Conlan or voluntarily ceased to be participants under the trust. This amendment, effective retroactively to December 12, 1946, was approved by the Commissioner.

Early in January, 1947, the Home Life Insurance Company received a request from the trustees for forms to enable them to transfer the ownership of the insurance policy to petitioner. The form was executed by the trustees on January 7, 1947, and provided in part:

"Anything in this policy to the contrary notwithstanding, the insured shall be the owner of this policy and may, without the consent of any beneficiary not irrevocably designated, exercise any option, enjoy any privilege and receive any benefit whatsoever contained in this policy."

On January 8, 1947, the change of ownership was noted on the records of the insurance company.

On January 9, 1947, petitioner obtained a loan from Home Life Insurance Company for $25,284, an amount equal to the cash surrender value of the policy as of December 15, 1947. The annual premium for 1947 in the amount of $6,999.15 and interest on the loan for that year in the amount of $1122.03 were deducted, and a check was issued to petitioner for $17,477.88, representing the cash proceeds of the loan plus dividends of $315.07. Petitioner endorsed the check and it was deposited to the account of Conlan. The amount so deposited was never repaid by Conlan.

In January, 1948 and again in January, 1949, petitioner obtained additional loans on the policy for the purpose of paying the premiums due in December, 1947 and December, 1948. The policy lapsed in December, 1949 for nonpayment of the premium then due.

The Tax Court held that the transfer of the policy occurred on January 8, 1947, that the transfer represented a distribution from a pension trust under Section 165(b) of the 1939 Code,[2] and that the cash surrender value of the policy on January 8, 1947, $19,817.07, constituted ordinary income taxable to petitioner for 1947.

Plaintiff has specified seven points of error. Points I, II and VI were considered by the Tax Court. Points III, IV, V and VII were either first raised on the petition for review or inadequately presented in the court below.

Petitioner contends under Points I and II that he was a mere conduit whereby the corporation recaptured its own funds; that petitioner received no bene-

---

2. Sec. 165(b), Int.Rev.Code of 1939:
  (b) Taxability of Beneficiary.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so distributed or made available, under section 22(b) (2) as if it were an annuity the consideration for which is the amounts contributed by the employee, except that if the total distributions payable with respect to any

employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.
(26 U.S.C.1952 Ed., § 165)

fit from the transfer; and that he cannot be taxed on value which he did not receive.

■ Petitioner, however, did in fact benefit from the transaction in that (1) a substantial part of the loan was used to pay the premium on an insurance policy for his benefit and (2) the balance of the proceeds of the loan was contributed to a corporation in which he owned one-half of the stock. There is no evidence that the policy was transferred to the taxpayer by the trustees for the purpose of obtaining a loan for the benefit of the corporation. Nor could the corporation by such a contrivance obtain funds for its own use. The trust enjoyed a tax exempt status under Section 165(a), which specifically provides that the trust must be for the "exclusive benefit" of the employee or his beneficiaries. After the employee acquired the policy he could make the loan and use the proceeds for any purpose he desired.

The case of Lewis v. O'Malley, 8 Cir., 1944, 140 F.2d 735, 736, upon which petitioner relies, is clearly distinguishable. That case did not involve a tax exempt trust under Section 165. There, a principal stockholder invested corporate funds (comprising all the cash the corporation then had) in single premium life insurance policies on the life of the stockholder. The corporation obtained various loans on the policies, repaid some of them, and "ultimately the policies were surrendered and their value returned to the accounts and to the uses of the corporation." It was clear that the insured stockholder was acting as the corporation's agent in receiving the funds. The policies were carried as assets of the corporation on its books and financial statements. The premiums were not, as here, deducted for tax purposes. The question involved was whether upon the investment of the funds in insurance policies there was a distribution of corporate funds essentially equivalent to a dividend. Here the question is whether an amount was "distributed or made

available" from the pension trust under Section 165(b).

The Tax Court properly found that, "There is no evidence in the record indicating that petitioner acted or intended to act merely as a conduit of Conlan funds without acquiring a right to the ownership of the policy," and that petitioner "obtained complete ownership of the policy, including the right personally to withdraw its cash surrender value as well as the right to continue the policy in force and borrow against it, as he did."

■ Under Point VI petitioner contends that the transfer of the policy from the trustees to petitioner occurred in 1946 and that any deficiency accordingly is barred by the statute of limitations. The Tax Court found that the transfer took place on January 8, 1947. This was a disputed issue of fact, determined by the Tax Court adversely to petitioner's contention. There is ample evidence to support the Tax Court's finding and it will not accordingly be disturbed.

In the court below petitioner relied almost entirely upon the contentions asserted as points I, II and VI. We concur in the view of the Tax Court on these points. We turn now to those contentions which were not adequately presented below and which in our opinion should receive further consideration by the Tax Court.

Under Point III petitioner contends that premium payments attributable to current life insurance protection were taxable to petitioner in the years when such premiums were paid and not when ownership of the policy was transferred.

Treasury Regulations III, promulgated under the Int.Rev.Code of 1939, contain in Section 29.165–6 the following provision:

" * * * If the trust purchases under the plan retirement income insurance with life insurance protection payable upon the death of the employee participants, so much of the premiums as was paid from the

contributions of the employer or earnings thereon for such life insurance protection will constitute income to the employee for the year or years in which the contributions or earnings are applied to the purchase of such life insurance. * * * "[3]

Respondent concedes that the premiums attributable to current life insurance were taxable to petitioner at the time of the contributions by the employer. He contends, however, that these premiums "would be the consideration paid" by the employee under the terms of Section 165(b), and since the resulting taxes were not in fact paid in the years when the contributions were made, the taxpayer in effect would receive "a credit for the premiums as if he had included them in his income and paid the corresponding tax when in fact he did not include such premiums in his income."

■ All contributions by the employer were made in the years 1942 to 1946, inclusive. No contribution was made in 1947. Plaintiff's income tax returns for the years 1942 to 1946 are not in evidence, and it cannot be determined whether the portions of the premiums attributable to life insurance were reported for those years. But this is immaterial. " * * * (T)he fact that a taxpayer has not paid income tax on income in a previous period does not make an item income in a subsequent period if it does not belong in that year." 2 Merten's Law of Federal Income Taxation, § 12.07.[4] Any portion of the cash surrender value of the policy attributable

to the life insurance feature of the policy would not be taxable in 1947.

This question was not considered by the Tax Court, and it does not appear from either the pleadings or briefs that it was raised by petitioner below. Nor did petitioner offer any evidence to show what portion of the cash surrender value of the policy was attributable to life insurance protection.

Under Point IV petitioner contends that the cash surrender value of the retirement income portion of the policy is not taxable to petitioner, because petitioner never surrendered the policy and never obtained any cash surrender value, but merely a loan. Regulation III, § 29.165–6 provides in part:

" * * * If a trust exempt under Section 165(a) purchases an annuity contract for an employee and distributes it to the employee in a year for which the trust is exempt, the contract containing a cash surrender value which may be available to an employee by surrendering the contract, such cash surrender value will not be considered income to the employee unless and until the contract is surrendered * * * "

Since the policy remained in force until 1949, when it lapsed for nonpayment of premium, there was no surrender of the policy in 1947.

Respondent contends, however, that the foregoing regulation is limited to "annuity contracts," is not applicable to "retirement income life insurance policies", and that the entire "net value" of

3. The regulation then prescribes the method for determining the cost of life insurance protection. This regulation is a clear recognition of the different treatment accorded that portion of the premium attributable to life insurance protection and that portion attributable to annuity or retirement benefits. The taxpayer must at some time pay income tax on all benefits conferred upon him by his employer. The life insurance benefits are taxable when the premiums thereon are paid. The annuity benefits are taxable when they are received, subject to the

provisions of Section 165(b) and pertinent regulations when the policy is distributed to the taxpayer.

4. Respondent argues that since the employee did not in fact pay any consideration within the meaning of Section 165 (b) he is not entitled to any credit in computing the tax upon distribution of the policy in 1947. To adopt this construction, however, would result indirectly in the bunching of income in 1947 which should have been reported in prior years.

the contract at the time of distribution was includible in income. It is conceded that the "net value" would be reduced by any portion which could not be used for continued insurance, known as the "deferable portion."

The contract of insurance is not in evidence. Nor, as respondent contends, does the evidence disclose whether the contract provided for "pure endowment" or what portion of the value at the time of distribution could not be applied to provide continued insurance protection.

Under current regulations (issued September 24, 1956, effective October 26, 1956)[5] there is a clear distinction between the distribution of "annuity contracts" and retirement income, endowment, and "other life insurance contracts." Under the regulations in effect in 1947, however, there was no regulation dealing specifically with a distribution of an endowment or retirement contract.[6] Respondent relies upon a Treasury release issued in 1950, Mim. 6461, 1950—1 Cum.Bull. 73 and P.S. No. 66, November 10, 1950 (1950 C.C.R. § 6228); and petitioner discusses the effect of this release under Point V. A portion of the release was quoted by the Tax Court in its opinion. The Tax Court did not, however, expressly pass upon the contentions of petitioner asserted under Points IV and V. As with Point III, there was a failure of proof to justify any finding, and the contentions were not adequately or properly presented. We do not either accept or reject the Commissioner's position on Point IV and leave the question of law for initial determination by the Tax Court.

■■ As in any trial court, the issues before the Tax Court are framed by the pleadings, and the Tax Court generally will not consider issues not raised by the pleadings. 9 Merten's Law of Federal Income Taxation, § 51.26. Similarly, on review, the appellate court ordinarily will not consider issues not properly raised before the Tax Court. Dall v. Commissioner, 2 Cir., 1955, 228 F.2d 526. However, "There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." Hormel v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037. In our opinion this is such a case. The respective parties should be afforded an opportunity to present evidence on points III and IV to the Tax Court for its consideration and appropriate findings. See Mitchell v. Commissioner, 2 Cir., 1951, 187 F.2d 706, 707, and cases there cited.

Under Point VII petitioner contends that in any event he should be taxed at a capital gain rate. Regulation III, §

5. Reg.1954 Code, § 1.402(a)–1(a) (2) and (3).

6. For a comparison of the regulations under the 1939 and 1954 Codes, see 1956 C.C.H.Fed.Tax Serv., § 10,788. With reference to distribution of retirement income and endowment contracts, the bulletin reads in part:

"In its 1939 Code regulations, the Internal Revenue Service provided only that the cash surrender value of an 'annuity' contract distributed to an employee under a trusteed plan was not income to the employee unless and until he turned it in for that cash surrender value. There was no provision dealing separately with distributions of endowment or retirement income contracts. Also, several issues of 'Your Federal Income Tax,' a publication of the Internal Revenue Service, listed retirement income contracts as one type of annuity."

* * * * *

(The regulations issued September 24, 1956) "contained substantially the same rule, for an 'annuity contract,' that had appeared in the 1939 Code regulations. However, they also contained a new, special rule for distributions of retirement income, endowment and 'other life insurance' contracts. Under the regulations, therefore, it can no longer be argued that any of these is an 'annuity contract' so far as the effect of a distribution is concerned." * * *

29.165–6 provides in part that if the total distributions are made "within one taxable year of the distributee on account of the employee's separation from the service," the amount of the distribution "shall be considered a gain from the sale or exchange of a capital asset held for more than six months * * *" Respondent argues that he was retired and not working for Conlan in 1946. It appears from the opinion of the Tax Court that, "The petitioner withdrew from the active employ of Conlan in 1946, but returned in 1947 and continued thereafter to serve as its president." In view of the fact that the case will be remanded, the Tax Court will have an opportunity to make a more explicit finding as to whether the distribution was made within one taxable year "on account of the employee's separation from the service."

The case is remanded for further consideration by the Tax Court of petitioner's points III, IV, V and VII.