Joseph F. Lauinger v. Commissioner.
Lauinger v. Commissioner
Docket No. 63098.
United States Tax Court
T.C. Memo 1963-155; 1963 Tax Ct. Memo LEXIS 189; 22 T.C.M. (CCH) 733; T.C.M. (RIA) 63155; June 5, 1963
Nathan Korn, One Hanson Place, Brooklyn, N. Y., for the petitioner. Charles M. Greenspan, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined a deficiency in petitioner's income tax for 1947 in the amount of $7,953.82. In his amended answer the respondent claimed an increased deficiency in the amount of $1,232.54. After trial on the issues raised by the pleadings filed herein, this Court on January 30, 1959, filed its Findings *190 of Fact and Opinion with respect thereto and, on February 3, 1959, entered its decision in favor of the respondent. Joseph F. Lauinger, 31 T.C. 934. Petitioner filed a petition for review of the decision of this Court with the United States Court of Appeals for the Second Circuit which, on August 15, 1960, rendered its opinion, Lauinger v. Commissioner, 281 F. 2d 419, and issued its mandate remanding the case to this Court for further consideration. Accordingly, the case is now before us under the mandate. The issue in this case involves the proper income tax treatment of a life insurance and retirement income contract which was acquired by petitioner from the trustees of an exempt, noncontributory pension trust established by the Conlan Electric Corporation of which petitioner was president and a 50 percent stockholder. The conclusions of this Court that the petitioner acquired ownership of the policy in question on January 8, 1947, and that he did not act merely as a conduit of the funds of Conlan Electric Corporation were affirmed by the Court of Appeals for the Second Circuit. However, because of new arguments raised by petitioner for the first time *191 on appeal, or improperly presented to this Court, the Court of Appeals did not rule on our holding that he realized taxable income in 1947 to the extent of the cash surrender value of the insurance contract, but directed us to give further consideration to the following: 1. With respect to the life insurance protection provided by the policy in question, the respondent conceded on appeal that under the provisions of Regulations 111, section 29.165-6, the petitioner was taxable on the premium payments attributable solely to the life insurance feature for the prior years (1942-1946) during which the premiums were paid by Conlan. The Court of Appeals held that any portion of the cash surrender value of the policy which represented premiums paid by Conlan on the life insurance feature would not constitute taxable income to petitioner for 1947. Since petitioner had failed to offer any evidence indicating what portion, if any, of the cash surrender value of the policy acquired by petitioner on January 8, 1947, represented life insurance premiums, the Court of Appeals suggested that we receive evidence on this point. 2. With respect to the retirement income feature of the policy, the *192 Court of Appeals left to this Court for decision a question of law raised by petitioner for the first time on appeal, i.e., whether or not the policy constitutes "an annuity contract" within the meaning of the respondent's regulations (Regulations 111, section 29.165-6), the distribution of which by an exempt pension trust would not constitute income to the employee-recipient until the surrender of the contract. 3. The Court of Appeals also requested this Court to make "a more explicit finding" as to whether the distribution of the insurance policy on January 8, 1947, was made "on account of the employee's separation from the service" within the meaning of the respondent's regulations. (Regulations 111, section 29.165-6.) The regulations provide that if a distribution is made "on account of the employee's separation from the service," the amount of the distribution "shall be considered a gain from the sale or exchange of a capital asset held for more than six months." Pursuant to the opinion and mandate of the Court of Appeals for the Second Circuit, we held a further hearing on October 15, 1962, and after consideration of the evidence there presented and the briefs filed by the *193 parties with respect to the above-stated matters, we make the following further Findings of Fact and Opinion. Findings of Fact The insurance policy here involved is policy No. 506,721 which was issued by the Home Life Insurance Company of New York on December 31, 1942, to the trustees of the Conlan Electric Corporation Pension Trust. At the time of its issuance, petitioner, who was named as the insured thereunder, was 53 years of age. The principal benefits provided by policy No. 506,721 are stated on page 1 thereof as follows: Home Life Insurance Company agrees to pay to the Insured a Monthly Income of the amount stated below, the first payment to be due on the date of maturity if the Insured is then living, the last income payment to be that due next preceding the death of the Insured. If the Insured shall die on or before the date of maturity, the Company further agrees that, upon receipt of due proof of the death of the Insured, it will pay as a death benefit the initial face amount hereof or an amount equal to the cash value at the end of the policy year in which such death occurs (on the basis of the table of cash values on the fourth page hereof), whichever amount *194 is greater. The greater amount so payable is herein referred to as "the face amount." If the Insured shall die after the date of maturity without having elected one of the alternate options at maturity, and within the period of ten years from the date of maturity (hereinafter referred to as "the period of years certain"), the Company further agrees to pay as a death benefit the discounted value at the rate of three per cent (3%) interest per annum, compounded annually, of any remaining payments for the period of years certain.
Any amount payable by reason of the death of the Insured will be paid to the beneficiary or beneficiaries named herein and in the manner herein set forth. If no designated beneficiary survives the Insured the proceeds at the death of the Insured shall be paid to the executors or administrators of the estate of the Insured unless some other provision for payment thereof has been made effective. Any indebtedness to the Company hereunder will reduce the amount otherwise payable hereunder. This contract is made in consideration of the payment of the first annual premium or the first instalment thereof and the further payment of premiums as herein provided *195 until 12 full years' premiums shall have been paid or until the prior death of the Insured. The Date of Maturity is December 15, 1954. The Monthly Income is Four Hundred Ninety Dollars. The Initial Face Amount is Forty Nine Thousand Dollars. The Maturity Value is Seventy Four Thousand Six Hundred Twenty Seven Dollars. The Insured is Joseph F. Lauinger. The Beneficiary is Caroline Lauinger, wife of the insured, as primary beneficiary; and Mildred Christians, John C. P. Lauinger and Joseph F. Lauinger, Jr., children of the insured, as secondary beneficiaries. The proceeds at the death of the Insured are to be paid in one sum to the primary beneficiary if then living, otherwise to the second beneficiary or beneficiaries then living equally if more than one. The Annual Premium is $6,999.16 for the first 9 policy years, $6,373.43 thereafter. The Annual Premium due date is December 15th. Policy Years are computed from December 15, 1942. Alternate Options at Maturity. In lieu of the above monthly income and death benefit after maturity, election may be made by written notice to the Company on or before the date of maturity either to surrender the policy as *196 of the date of maturity for its maturity value, or to change the policy as of the date of maturity in accordance with and subject to the provisions and conditions set forth under "Optional Paid-Up Life Policy at Maturity" on the fourth page hereof. The cash value of the policy and the non-forfeiture provisions available thereunder are as follows: CASH VALUE If there are no paid-up additions or dividend accumulations the cash value at the end of any policy year to maturity, provided that premiums have been paid in full to the end of such policy year, shall, during the first twenty policy years, be the cash value shown for the end of such policy year in the "Table of Cash, Loan and Non-forfeiture Values" on page 4 hereof, and shall, commencing at the end of the twentieth policy year, be the reserve for the face amount of the policy (such reserve being taken to the nearest dollar per $1,000 initial face amount). The cash value, on the date to which premiums have been paid if premiums have not been paid in full to the end of the current policy year, or other than at the end of a policy year if the policy has become paid-up for its face amount, shall be the cash value at the end of *197 the preceding policy year plus a proportionate part of the increase in the cash value from the end of the preceding policy year to the end of the current policy year; provided, however, that there shall be no cash value prior to the end of the policy year when a cash value is first shown to be available under said table. If there are paid-up additions or dividend accumulations the cash value shall be the cash value as above with the addition thereto of the reserve for any paid-up additions and dividends credited to the policy but not withdrawn. At and after the end of the third policy year the cash value will not be less than the reserve for the face amount of the policy less an amount equal to two and one-half per cent of the face amount. The cash value of the paid-up insurance under Non-forfeiture Provision (a) shall be the reserve thereon. NON-FORFEITURE PROVISIONS The following provisions will become operative only after premiums have been paid hereunder to the end of the policy year when a cash value is first shown to be available under the "Table of Cash, Loan and Non-forfeiture Values" on page 4 hereof, which in no event will be later than the end of the third policy *198 year. (a) Automatic Reduced Paid-Up Insurance. If default in the payment of any premium or instalment thereof continues until the end of the grace period, the Company will continue the policy for a reduced amount of participating paid-up insurance (without any disability, accidental death, family income or family maintenance benefits) payable in one sum on the date of maturity or on the same conditions as this policy as a death benefit prior to the date of maturity. The amount of the paid-up insurance shall be such as the cash value on the due date of such unpaid premium or instalment less the amount of any indebtedness hereunder will purchase at the attained insurance age of the insured on such date when applied as a net single premium; provided, however, that if the amount of the paid-up insurance so computed exceeds the face amount of the policy immediately prior to such due date together with the amount of any outstanding paid-up additions, less any indebtedness to the Company, the endowment period shall be reduced so that the amount of the insurance shall equal the face amount of the policy immediately prior to such due date together with the amount of any outstanding paid-up *199 additions, less any indebtedness to the Company. (b) Surrender For Cash Value. In lieu of such reduced paid-up insurance, the policy may, within three months after the due date of such unpaid premium or instalment, be surrendered for its cash value as of such due date less the amount of any indebtedness hereunder upon submission of a written request therefor satisfactory to the Company. If the policy has become paid-up for its face amount or if the policy is in force under Non-forfeiture Provision (a), it may be surrendered for its cash value less the amount of any indebtedness hereunder upon submission of a written request therefor satisfactory to the Company. The payment of any amount due upon surrender may be deferred by the Company for a period not exceeding six months from the date written request therefor is received by the Company, or if such period is in excess of the maximum period permitted by law then for the maximum period permitted thereby, provided that, if such payment is deferred by the Company for a period of thirty days or more, interest at the rate of three per cent per annum will be paid on the amount of the deferred payment from the date the policy is surrendered *200 to the date of payment. Under the table of cash, loan, and non-forfeiture values appearing in the policy, the cash surrender value thereof on the indicated dates was as follows: Date
Amount
12-15-43
$ 2,695
12-15-44
8,232
12-15-45
14,014
12-15-46
19,502
The cost of one year term insurance on the net amount as risk during the years 1943 through 1946, inclusive, was as follows: Date
12/15/43
12/15/44
12/15/45
12/15/46
Face Amount (A)
$49,000
$49,000
$49,000
$49,000
Guaranteed Cash Value (B)
2,695
8,232
14,014
19,502
A-B (Amount at Risk)
46,305
40,768
34,986
29,498
Attained Age
54
55
56
57
Amount at Risk
$46,305.00
$40,768.00
$34,986.00
$29,498.00
1 Year Term premium on Amount
at Risk [1]
$ 586.68
$ 560.15
$ 521.64
$ 477.28
Petitioner held the office of President of Conlan Electric Corporation throughout the period 1942 through 1952. Due to illness, Joseph Lauinger was not actively engaged in the employment of Conlan from December, 1945 until early in January, 1947. On or about January 8, 1947, he resumed the active management of Conlan Electric *201 Corporation. From 1942 until July, 1947, petitioner owned one-half of the outstanding stock of Conlan and his brother, George Lauinger, owned one-half. In July, 1947, petitioner purchased all of his brother's Conlan stock. Petitioner did not resign, retire, or otherwise terminate his relationship with Conlan during any of the years here material, and he did not receive the life and retirement income policy in question in connection with any actual or contemplated separation from the service of his employer. Except as modified by the foregoing findings, the facts as found in our original findings are here adopted and by reference made a part hereof. Opinion With respect to the premiums attributable to life insurance protection which were paid by Conlan prior to 1947, the record discloses that such life insurance premium payments amounted to $586.68, $560.15, $521.64, and $477.28 for the years 1943 through 1946, inclusive. These amounts constituted income taxable to petitioner for the years in which the payments were made by Conlan. Lauinger v. Commissioner, supra; Regulations 111, section 29.165-6. However, petitioner has failed to show whether any part of the cash surrender *202 value of the policy in question was attributable to the premium payments made by Conlan with respect to the life insurance coverage provided by the policy during the years 1943 through 1946. Consequently, even though these premium payments were taxable to petitioner during the years in which the payments were made, since the record does not indicate that any portion of these premiums was reflected in the cash surrender value of the policy, it does not follow that to the extent of the accumulated life insurance premiums the cash surrender value of the policy is exempt from taxation in the year of receipt. The taxability of distributions of property to an employee-beneficiary by an exempt pension trust during 1947, the year here in issue, is governed by section 165(b) of the 1939 Code which states distributee by any such trust shall be taxable to him, in the year in which so distributed or made available * * * In our original opinion in Joseph F. Lauinger, supra, we held that the acquisition of the policy by petitioner from the Conlan Electric Corporation Pension Trust on January 8, 1947, represented a taxable distribution within the meaning of section 165(b) of the *203 1939 Code. On appeal and in the present proceeding, petitioner contends that the policy must properly be regarded as an "annuity contract" within the meaning of the respondent's regulations. The pertinent portion of the regulations provides: If a trust exempt under section 165(a) purchases an annuity contract for an employee and distributes it to the employee in a year for which the trust is exempt, the contract containing a cash surrender value which may be available to an employee by surrendering the contract, such cash surrender value will not be considered income to the employee unless and until the contract is surrendered. [Regs. 111, sec. 29.165-6.] Although we are aware of no authority which specifically defines an "annuity contract" within the meaning of the abovequoted portion of the respondent's regulations, and the parties have cited none, in view of the fact that the predominant benefit provided by the policy appears to be life insurance coverage, we seriously doubt that it can be regarded as such an "annuity contract." However, in a published ruling the respondent has recognized the practical problem involved where an exempt pension trust distributes a policy which *204 combines life insurance with other types of coverage such as retirement income benefits. Mim. 6461, 1950-1 C.B. 73. This ruling, which we quoted in part in footnote 2 of our original opinion, attempts to spell out the proper method for determining the taxability of the distribution of such an insurance contract. Mim. 6461, supra, provides in pertinent part as follows: A deferment for inclusion of the value of the contract in income is thus afforded where the contract is an annuity contract. A similar deferment applies in case the contract purchased is an insurance contract but, incident to its distribution, it has been irrevocably converted into an annuity contract or its entire value has been irrevocably settled under an agreement essentially like an annuity contract. 2. If a trust exempt under section 165(a) of the Code distributes an insurance contract to an employee so that part or all of its then value could be applied to continue insurance for him under such a contract, the value so applicable then loses its previous status as an accumulation to secure deferred benefits under a pension or profit-sharing plan, as to which inclusion in income has been deferred, *205 and becomes a distribution of the trust which must be included in the income of the employee for the year in which the contract is distributed, as provided in section 165(b) of the Code, whether or not such value could then be obtained in cash by surrender of the contract. In general, the amount of such distribution is considered to be the entire net value of the contract at the time it is distributed. This net value should, however, be reduced by any portion thereof which could not, under any circumstances, be used for continued insurance of an amount payable under an insurance contract in event of death before maturity of the contract. Thus, if the contract distributed is a typical endowment or income endowment insurance policy (often called "retirement endowment" or "retirement income" policy) and it could be continued in full force after it is distributed, the amount of the distribution is considered to be the then entire value of the contract reduced by any excess thereof over the then value of term insurance from that time to the maturity date for the amount (or increasing amounts) which would be payable in event of death of the insured if the contract were so continued, provided *206 no more valuable insurance could be obtained by conversion of the contract after its distribution. If such a contract is distributed and, incident to its distribution, it is converted into a typical reduced paid up endowment or income endowment insurance form, the amount of the distribution is considered to be the then entire value of the contract reduced by the excess thereof over the then value of term insurance from that time to the maturity date for the amount (or increasing amounts) which would be payable under such form in event of death of the insured, provided no more valuable form of insurance could be obtained by conversion or reinstatement of the contract after its distribution. * * * The parties appear to agree on brief that Mim. 6461, supra, controls the taxability of the distribution here in question. As we read this ruling, in the event an insurance contract combining mixed benefits is distributed, the amount which constitutes taxable income to the employee is equal to the cash value of the policy less any portion of its value which could not under any circumstances be applied for the purchase of continued life insurance protection. The petitioner has failed to indicate *207 what portion, if any, of the cash surrender value of the policy here in question could not be used to obtain continued life insurance protection. In fact, the nonforfeiture provisions of the policy indicate that under certain circumstances the entire cash surrender value thereof could be used to purchase a reduced amount of paid-up life insurance. Thus, applying Mim. 6461, supra, to the facts here involved, there appears to be no justification for reducing the cash surrender value of the policy received by petitioner on January 8, 1947, and, under the terms of that ruling, the entire cash surrender value represents taxable income to him at the time of distribution. Petitioner further contends that if he realized any taxable income as a result of the acquisition of the policy in 1947, he is entitled to report the amount as long-term capital gain under the provisions of respondent's regulations. Regulations 111, section 29.165-6, state: If total distributions payable with respect to any employee under a trust that in the year of distribution is exempt under section 165(a) are paid to the distributee within one taxable year of the distributee on account of the employee's separation *208 from the service, the amount of such distribution, to the extent it execeeds the amount contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than six months. * * * Inasmuch as it is apparent from the record that at all times here material petitioner held the office of President of Conlan Electric Corporation and that on or about January 8, 1947, the date on which he received the insurance policy in question, he resumed the active management and direction of the corporation, we find no merit to the claim that the policy was distributed to him "on account of" his "separation from the service" within the meaning of the respondent's regulations. See Estate of Frank B. Fry, 19 T.C. 461 (1952), affd. 205 F. 2d 517 (C.A. 3, 1953). Accordingly, pursuant to the mandate of the Court of Appeals for the Second Circuit, after careful consideration of the additional facts presented at the hearing held on October 15, 1962, we hold under section 165(b) of the 1939 Code that the acquisition by petitioner of the life and retirement income insurance policy from the trustees of the Conlan Electric Corporation *209 Pension Trust on January 8, 1947, constitutes ordinary income to petitioner to the extent of the cash surrender value thereof. Decision will be entered for the respondent. Footnotes
1. U.S. Life Tables and Actuarial Tables 2 1/2%.↩