HOWARD H. PERELMAN AND CARRIE K. PERELMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92182. Filed November 20, 1963.

*Lewis Perelman,* for the petitioners.
*John F. Papsidero,* for the respondent.

## OPINION

In their petition, petitioners alleged that the gain from the sale of the Gaines, Clark, and Gregory properties was not includable in their income for the respective years 1957 and 1958 because respondent had changed their method of accounting. On brief petitioners took somewhat of an alternative approach and contended that the gain from the respective properties should have been reported

in 1951 and 1952 when the sales were made. Petitioners argue that they received, in the year of sale, cash and property equal to the total sales price of each piece of property and that this amount was in excess of the adjusted basis of each piece of property for determining gain. Therefore, petitioners contend that under sections 111 [1] and 112 [2] of the 1939 Code the gain in question should have been reported in 1951 and 1952 rather than in 1957 and 1958.

Respondent contends that the gain from the three sales in question should be reported in 1957 and 1958 as determined in the notice of deficiency. To support his position, respondent contends that petitioners voluntarily changed their method of accounting in 1957. Respondent contends that from 1951 through 1956 petitioners reported on the cash basis and then changed to the accrual method in 1957 to avoid the payment of taxes on the income from the 1951 and 1952 sales. In his opening statement, respondent stated that the changes he himself had made in the earlier years were merely "adjustments" and limited solely to the years involved. Respondent asserted that "the adjustments were such that the respondent felt that the land contracts had value and therefore under a cash basis of accounting, they are properly includable in income" in the year of sale. Respondent stated that, in any event, there had been no requirement that petitioners change their method of accounting. Respondent next contends that the courts have followed the rule that, where deferred payments are evidenced only by a contract, as in this case, and no other evidence of indebtedness, such as a note or bond, is given to the vendor, the amount of the deferred payments should be included in income only when the payment is received. *Harold W. Johnston*, 14 T.C. 560 (1950). Therefore, respondent contends the gain should be reported in 1957 and 1958. Respondent's final contention is that, in any event, petitioners have failed to prove the land contracts in question had a fair market value in 1951 and 1952.

We have concluded that respondent's contentions must be rejected.

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

(a) COMPUTATION OF GAIN OR LOSS.—The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 113(b) for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

(c) RECOGNITION OF GAIN OR LOSS.—In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this chapter, shall be determined under the provisions of section 112.

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

In essence, respondent has taken the position that the changes he made for the years 1953, 1954, and 1955 were merely corrections of errors, whereas, in the later years petitioners voluntarily changed their method of accounting by taking the same action. Then, respondent apparently proceeds to accept the new method for one purpose, i.e., to tax petitioners on the gain from the Murray sale in 1957, and reject it for another, i.e., to include the income from the 1951 and 1952 sales in 1957 and 1958. This position is untenable.

Assuming, *arguendo*, that petitioners' method of accounting was changed, sections 446 and 481 of the 1954 Code [3] are relevant.

As originally enacted, section 481(a) [4] provided that where taxable income for any year is computed under a method of accounting different from the method under which income was computed for the preceding year, there shall be taken into account those adjustments determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted. However, an exception was made for any adjustment in respect of any taxable year to which section 481 did not apply; that is, a year not covered by the 1954 Code. Subsequently, the Technical Amendments Act of 1958 retroactively amended section 481(a) [5] to provide that no adjustment in respect to pre-1954 Code years would be taken into account "unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

If the petitioners' method of accounting were changed, the crucial inquiry, under section 481(a), is whether the taxpayers "initiated" [6]

---

[3] Unless otherwise stated, all references are to the Internal Revenue Code of 1954.

[4] SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply.

[5] The amended paragraph now reads:

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply *unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.* [Emphasis supplied.]

[6] As used in section 481(a)(2), the word "initiate" has been interpreted to mean "to introduce by a first act; to make a beginning with; to originate; begin." *Fred P. Pursell,* 38 T.C. 263 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963); *United States* v. *Lindner,* 307 F. 2d 262 (C.A. 10, 1962). Changes in methods of accounting initiated by the taxpayer include a change in method of accounting which he originates, by requesting permission of the Commissioner to change, and also cases where taxpayer shifts from one method of accounting to another without the Commissioner's permission. A change in the taxpayer's method of accounting required by a revenue agent upon examination of the taxpayer's return would not, however, be considered as initiated by the taxpayer. H. Rept. No. 775, 85th Cong., 1st Sess., p. 20 (1957), 1958–3 C.B. 830; S. Rept. No. 1983, 85th Cong., 2d Sess., p. 45 (1958), 1958–3 C.B. 966.

the change. It is readily apparent that they did not. Prior to 1957, petitioners' method of accounting for sales, where a land contract was received, was to report the gain on a deferred basis. Respondent changed this method and compelled petitioners to report the gain from this type of sale in the year in which it was made. Respondent's action in this respect was no mere suggestion that petitioners make a change. Cf. *Irving Falk*, 37 T.C. 1078 (1962), on appeal (C.A. 5, July 30, 1962). Respondent took the first step to set the change in motion and took overt steps to cause it to be made; therefore, we conclude that petitioners did not initiate the change. *United States* v. *Lindner*, 307 F. 2d 262 (C.A. 10, 1962); cf. *Fred P. Pursell*, 38 T.C. 263 (1962), affirmed per curiam 315 F. 2d 629 (C.A. 3, 1963). Thereafter petitioners merely began using the new method at the first available opportunity—1957.[7] It would be unreasonable to expect them to have done otherwise. Having made his decision, respondent must abide by it with all its attendant consequences. Since respondent "initiated" the change and any adjustments would be with respect to pre-1954 Code years (1951 and 1952), no adjustments are required by section 481(a). Consequently, respondent's determination for 1957 and 1958 cannot be sustained under section 481.[8]

Respondent has not cited or discussed the applicability of section 446, but he appears to rely on section 446(e)[9] inferentially. If petitioners had changed their method of accounting without first requesting the permission of the respondent, it is possible he could have insisted that they revert to their old method. However, respondent

---

[7] While it is true that petitioners stated in their returns that they were reporting on an "accrual basis," we are satisfied that they were only referring to the fact that they had changed their method of reporting gain from sales where a land contract was received. The use of the label "accrual basis" was, no doubt, due to the revenue agent's statement that petitioners were being placed on the accrual method of accounting. Respondent made no attempt, at the trial, to refute this view; although the examining agent was present at the trial, he did not testify.

[8] Even if we were to assume, *arguendo*, that a change in petitioners' method of accounting was voluntarily made by petitioners, the amounts respondent determined for the years 1957 and 1958 appear to be erroneous. The adjustments required by section 481(a) are taken into account in the year of change, unless one of the spreading provisions of section 481(b) is applicable. Thus, it is possible that no deficiency could be sustained for 1958 and the determination for 1957 be limited to the amount determined since respondent has not asked for a greater deficiency in 1957, or the deficiencies for each year could be less than determined depending on which one of the spreading provisions of section 481(b) might be applicable.

[9] SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.

(e) REQUIREMENT RESPECTING CHANGE OF ACCOUNTING METHOD.—Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary or his delegate.

can find no support in section 446(e) for his determinations since he was the one who caused the change to be made.[10]

Finally, if we assume, *arguendo*, that respondent is correct, and that the changes he made for the years 1953, 1954, and 1955 were merely "adjustments" or a correction of errors and not a change in petitioners' method of accounting, petitioners must still prevail. Certainly, if the change made by respondent in 1953–55 was merely an adjustment or correction, then the identical change made by petitioners in 1957 and 1958 can only be characterized in similar fashion. When, in 1957 and 1958, petitioners began reporting the entire gain from sales, where a land contract was received, in the year in which the sale was made, the change was entirely consistent with the position respondent took for the prior years and the method was supported fully by the evidence of fair market value of the contracts in question.

The uncontradicted testimony of petitioners' expert witness, which we accept, was that the land contracts from the 1951 and 1952 sales had a fair market value equal to their face amount in the respective years in which they were received.[11] Therefore, the income from the sales in 1951 and 1952 should have been reported in those years rather than in 1957 and 1958. *John W. Commons*, 20 T.C. 900 (1953); secs. 111 and 112, 1939 Code, *supra*. The fact that a taxpayer has not paid income tax on income in a previous period does not make it income in a subsequent period if it does not belong in that year. See *Security Mills Co.* v. *Commissioner*, 321 U.S. 281 (1944); *Welp* v. *United States*, 201 F. 2d 128 (C.A. 8, 1953); *Lauinger* v. *Commissioner*, 281 F. 2d 419 (C.A. 2, 1960), remanding on another issue 31 T.C. 934 (1959); *Pacific Coast Biscuit Co.*, 32 B.T.A. 39 (1935); *Jamieson* v. *United States*, 10 F. Supp. 321 (D. Mass. 1935). *Commissioner* v. *Dwyer*, 203 F. 2d 522 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court.

---

[10] Even assuming, *arguendo*, that petitioners did change their method of accounting without first seeking the permission of the Commissioner, it is again doubtful that the correct deficiencies were determined for 1957 and 1958. The Gaines contract provided for monthly payments of $110 each, yet respondent determined that petitioners had a gain of $2,476.51 in 1957. The Clark contract provided for monthly payments of $100 each and the Gregory contract provided for monthly payments of $105 each in the later years, yet respondent determined that income from the respective contracts was $2,662.41 and $2,840.63 in 1958. At the very least, it would appear that an adjustment should have been made in petitioners' income for 1957 because of the Murray sale. The entire gain on the sale of the Murray property was taken into account in the year of sale which was contrary to petitioners' prior method.

[11] Although respondent took the position that in 1953, 1954, and 1955 the land contracts had a fair market value equal to their face value, he apparently now takes the position that as a matter of law the land contracts received in 1951 and 1952 could have no fair market value. Contrary to this latter view, land contracts can and do at times have a fair market value. See *Darby Investment Corporation*, 37 T.C. 839 (1962), affd. 315 F. 2d 551 (C.A. 6, 1963); sec. 1.1001–1(a), Income Tax Regs.; cf. *Nina J. Ennis*, 17 T.C. 465 (1951). Whether a land contract has a fair market value is a question of fact to be decided after a consideration of all the attendant circumstances.

We conclude that respondent's determinations for 1957 and 1958 were erroneous. Accordingly, we hold for the petitioners on this issue. Reviewed by the Court.

*Decision will be entered under Rule 50.*